UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.

NH LEARNING SOLUTIONS
CORPORATION,

      Defendant.

Civil Case No. _____

**Demand For Jury Trial**

_____

## COMPLAINT OF THE UNITED STATES
## FOR VIOLATIONS OF THE FALSE CLAIMS ACT

The United States of America brings this action against NH Learning

Solutions Corporation ("NHLS") to recover treble damages and civil penalties for

violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA").   For its

Complaint, the United States alleges as follows:

### INTRODUCTION

1.    The Post-9/11 GI Bill, 38 U.S.C. §§ 3301–27, provides educational

assistance benefits for eligible veterans and members of the armed services who

enroll in qualified education or training programs.   The Department of Veterans

Affairs ("VA") remits tuition and fees directly to schools and provides veteran

students a monthly housing allowance and stipend for books and supplies.   These

benefits are part of our promise to support veterans after honorably serving our

country.

2.     NHLS profited handsomely off this country's promise to those veterans by inflating the reimbursement it sought from the VA for courses provided to Post-9/11 GI Bill funded veteran students.

3.     For veterans, the true total cost of NHLS's courses was whatever the VA would reimburse based on the veteran's educational assistance benefits.   So, for a veteran receiving a maximum benefit of 100 percent tuition and fees (referred to as a "fully funded veteran"), NHLS charged the VA the total cost of the course, and VA would pay it.   For a veteran receiving less than the maximum benefit (referred to as a "less than fully funded veteran"), NHLS still charged VA the total cost of the course, but VA would reimburse only up to the amount of the veteran's available educational assistance benefit.   NHLS then discounted the remaining balance owed by those veterans through unreported grants, scholarships, or outright waivers, making the true cost of the course whatever VA would pay.

4.     Throughout its participation in the Post-9/11 GI Bill program NHLS knowingly inflated the amount of reimbursement it sought from the VA for student tuition for hundreds of veterans, in violation 38 U.S.C. § 3313(c), the so-called "Last Payer Rule".   NHLS did so despite certifying on those same claims that it was in compliance with the requirements found in Title 38 of the U.S. Code, including but not limited to the Last Payer Rule.

5.     These claims for payment and the corresponding certifications were

therefore false.   As a result, the VA paid NHLS millions of dollars for veteran

tuition and fees that NHLS was not entitled to receive.

6.     The VA would not have remitted Post-9/11 GI Bill funds to NHLS

had it known that these claims and certifications were false.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter and all parties to

this action pursuant 28 U.S.C. §§ 1331 and 1345, because this is a civil action by

the United States that arises under the FCA and federal common law, and all

claims in the action form part of the same case or controversy.

8.     The Court has personal jurisdiction over Defendant pursuant to 31

U.S.C. § 3732(a) because Defendant has transacted business, and committed acts

proscribed by the FCA, within this District.

9.     Venue is proper in the Eastern District of Michigan under 28 U.S.C.

§§ 1391(a)-(c), 1395(a), and 31 U.S.C. § 3732(a), because Defendant is located,

resides, does business, or committed the acts at issue in this district.

## STATUTE OF LIMITATIONS

10.     NHLS executed a tolling agreement and extensions of that agreement

with the United States that tolled the running of the statute of limitations from May

24, 2021, through November 21, 2022.

11.     All of the claims in this matter are timely under 31 U.S.C.

§ 3731(b)(1).

## THE PARTIES

12.     Plaintiff United States of America brings this action on behalf of the VA, which regulates the provision of educational assistance benefits under the Post-9/11 GI Bill.

13.     Defendant NHLS is a Michigan domestic for profit corporation with its principal place of business at 14115 Farmington Road, Livonia, Michigan 48154.   Until 2014, NHLS was known as New Horizons Great Lakes Holding Corporation, which operated under an assumed name of New Horizons Computer Learning Centers.

14.     Until at least 2020, NHLS owned at least fifteen franchise licenses from New Horizons, Inc. to sell and deliver training throughout the Midwest and Northeast United States.

15.      Under these franchise licenses, NHLS provided instructor-led training, live and online, in the use of business applications, business skills, information technology (IT), leadership and management and business process optimization at its training centers located throughout the Northeast and Midwest, all of which operated under the trade name New Horizons Computer Learning Centers.

16.     The NHLS locations relevant to this Complaint include Chicago, Illinois; Grand Rapids, Michigan; Livonia, Michigan; Troy, Michigan; and Garfield Heights, Ohio.   NHLS owns and controls the operations of each of these

locations through other companies it also owns and controls, including but not limited to NH Chicago, LLC a/k/a New Horizons CLC of Chicago; NH Cleveland, LLC a/k/a New Horizons Computer Learning Centers of Garfield Heights; New Horizons – Grand Rapids, LLC a/k/a New Horizons Computer Learning Centers of Grand Rapids; M & J, LLC a/k/a New Horizons Computer Learning Centers of Michigan.

## **POST-9/11 GI BILL**

17.     The Post-9/11 GI Bill provides financial support to service members, veterans, and eligible dependents who attend education or training programs taken at accredited colleges or universities and at certain schools or programs that do not grant college degrees.   38 U.S.C. §§ 3301–27.

18.     Non-accredited educational institutions seeking to provide VA-eligible programs must first apply to their state's State Approving Agency (SAA), which oversees approval and compliance with federal guidelines.   *See* 38 U.S.C. § 3676(a).   SAAs are independent state agencies authorized by federal statute and are responsible for ensuring the quality and integrity of programs of education and training for the use of Post-9/11 GI Bill benefits and approving such programs to receive VA benefits.   38 U.S.C. § 3671.

19.     Non-accredited educational institutions must meet the requirements of 38 U.S.C. § 3676 ("Approval of nonaccredited courses") and 38 C.F.R. § 21.4254 ("Nonaccredited courses") for course approval and are subject to the limitations set

5

forth in 38 U.S.C. § 3680A ("Disapproval of enrollment in certain courses") and 38 C.F.R. § 21.4201 ("Restrictions on enrollment; percentage of students receiving financial support").

20.     For eligible individuals, the Post-9/11 GI Bill pays up to 100 percent of their tuition and fees, which the VA pays directly to the school.   Students who are not active-duty service members also receive a monthly housing allowance and stipend for books and supplies.   *See* 38 U.S.C. §§ 3313(g)(3), (h).

21.     The amount of an eligible veteran's benefits is based on her time in service.   *See* 38 U.S.C. §§ 3311(b), 3313(c).   For example, an individual who served an aggregate of at least 36 months on active duty would be entitled to a benefit of up to 100 percent tuition and fees, subject to certain reductions described in 38 U.S.C. § 3313(c)(1), if applicable; an individual who served an aggregate of at least 30 months but less than 36 months on active duty and who is not service disabled would be entitled to a benefit of up to 90 percent tuition and fees, subject to certain reductions described in 38 U.S.C. § 3313(c)(1), if applicable.   *See* 38 U.S.C. §§ 3313(c)(1) and (2).

22.     For payments made under the Post-9/11 GI Bill, the VA is the payer of last resort.   That is, the VA pays the "actual net cost for in-state tuition" charged by a school after it has applied "any waiver of, or reduction in, Tuition and Fees; and any scholarship, or other Federal, State, institutional or employer-based aid or assistance."   *Id.* § 3313(c).   This is known as the "Last Payer Rule."

6

23.     For example, where a less than fully funded veteran who is eligible to receive 60 percent of the full benefit enrolls in a course costing $100, the school should report to the VA the actual net cost of $100 if the veteran does not also qualify for any tuition reduction, scholarship, or other aid.   The VA would then pay $60 to the school, and the veteran student would pay $40 out of pocket.   If, for the same course and the same veteran, the school reduced the tuition by $40, the school should report and certify the actual net cost of $60.   The VA would then pay $36 to the school (or 60 percent of the $60 net cost), and the veteran would still owe $24 (or 40 percent of the $60 net cost).   Importantly, a less than fully funded veteran will always pay something out of pocket.

24.     The VA processes reimbursement claims from educational institutions for tuition and fees in VA-ONCE, an internet-based system.   Educational institutions must designate at least one school certifying official who is authorized to submit claims through VA-ONCE.

25.     After receiving approval to participate in VA education benefits programs, the educational institution submits claims for payment of federal funds to the VA using VA-ONCE.   Each claim is an electronic certification that the eligible student is enrolled in a particular program or course of study.   The claim also includes the name of the program, the clock hours for that particular program, the dates of enrollment, and the amount of tuition and fees charged.

26.     To gain access to VA-ONCE, an approved school signs a

memorandum of understanding in which it certifies that it will "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system is subject to "all duties and liabilities pertaining to educational institutions," including with respect to "all certifications" and "any other provisions of law or regulations that apply."

27.     Each electronic claim for payment submitted by the school is certified, expressly incorporating by reference the certifications found on VA Form 22-1999, including: (a) that the school "has exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA;" (b) that it "agrees to report promptly to VA any enrollment change and any change due to unsatisfactory progress, conduct, or attendance;" and (c) that "the 85-15 ratio requirements [i.e., the ratio of enrolled students who receive tuition assistance from the VA or the school and those who do not] have been satisfied."

28.     After receiving a school's claim through VA-ONCE, the VA processes and pays automatically based on the certifications accompanying the claim.

## THE FALSE CLAIMS ACT

29.     The FCA provides, in part, that any person who individually, or in concert with others, knowingly presents, or causes to be presented, a false claim

for payment or approval, or makes, uses, or causes to be made or used a false

statement that is material to a claim for payment or approval, is liable to the United

States for penalties and treble damages.   *See* 31 U.S.C. §§ 3729(a)(1)(A)-(C).

30.     Knowingly means that the person: (1) had actual knowledge of the

information; (2) acted in deliberate ignorance of the truth or falsity of the

information; or (3) acted in reckless disregard of the truth or falsity of the

information.   *See* 31 U.S.C. §§ 3729(b)(1).   The person need not have acted with

specific intent to defraud the United States to be liable under the FCA.   *Id*.

31.     As is relevant here, a "claim" under the False Claims Act includes

"any request or demand, whether under a contract or otherwise, for money or

property . . . that is presented to an officer, employee, or agent of the United

States."   31 U.S.C. § 3729(b)(2)(A)(i).

## FACTUAL ALLEGATIONS

A.      **VA approved NHLS's locations to enroll Post-9/11 GI Bill-funded**
        **veterans and to certify enrollment through VA-ONCE**

32.     Each NHLS location, or NHLS on their behalf, sought and received

approval to enroll Post-9/11 GI Bill funded students in its courses.

33.     On or after October 1, 2003, the VA approved NH Chicago, LLC's

application to enroll in courses students who received Post-9/11 GI Bill benefits.

NH Chicago LLC's application was submitted to the State of Illinois SAA under

NH Chicago LLC's trade name, New Horizons CLC of Chicago, by then-General

Manager, Steven Talbott, on or about April 18, 2003.   The VA assigned this

9

location a facility code of 25-0547-13.

34.     On or about July 8, 2005, the VA approved New Horizons Computer Learning Center of Michigan's application to enroll in courses at NHLS's Grand Rapids location students who received Post-9/11 GI Bill Benefits.   The approval had an effective date of December 14, 2004.   New Horizons Computer Learning Center of Michigan's original application was submitted on or before June 6, 2005, to the State of Michigan SAA by Mark McManus, Jr., as President and CEO.   He was also listed as a Certifying Official.   The VA assigned the Grand Rapids location a facility code of 25-0282-22.

35.     On or after February 27, 2004, the VA received and approved New Horizons Computer Learning Center of Michigan's application to enroll in courses at NHLS's Livonia location students who received Post-9/11 GI Bill Benefits. The approval had an effective date of October 21, 2003.   New Horizons Computer Learning Center of Michigan's original application was submitted before November 6, 2003, to the State of Michigan SAA and later resubmitted on or about January 26, 2004, to add and withdraw certain programs from the application. The VA assigned the Livonia location a facility code of 25-1551-22.

36.     On or about August 15, 2005, the VA approved New Horizons Computer Learning Center of Michigan's application to enroll in courses at NHLS's Troy location students who received Post-9/11 GI Bill Benefits.   New Horizons Computer Learning Center of Michigan's original application was

10

submitted prior to August 4, 2005, to the State of Michigan SAA by Mark McManus, Jr., as President and CEO.   The VA assigned the Troy location a facility code of 25-0281-22.

37.    On or about September 17, 2003, the VA approved New Horizons Computer Learning Center of Cleveland's application to enroll in courses at NHLS's Garfield Heights location students who received Post-9/11 GI Bill Benefits.   New Horizons Computer Learning Center of Michigan's original application was submitted before April 18, 2003, to the State of Ohio SAA and was effective as of that date.   The VA assigned the Garfield Heights location a facility code of 25-5629-35.

**B.      NHLS submitted VA-ONCE electronic enrollment certifications for its locations**

38.    Each NHLS location described in Paragraphs 33 through 37 above also executed a VA-ONCE Memorandum of Understanding in which it certified that the school would "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system was subject to "all duties and liabilities pertaining to educational institutions," including with respect to "all certifications" and "any other provisions of law or regulations that apply."   A current version of the VA-ONCE Memorandum of Understanding may be found at https://www.benefits.va.gov/GIBILL/resources/education_resources/mou.html.

39.    Each VA-ONCE Memorandum of Understanding executed by the

11

NHLS locations expressly incorporated those requirements into each electronic certification of enrollment "even though the provisions of those laws, regulations, or requirements do not appear on the certifications created by the VA-ONCE program."

40.  On or about November 3, 2004, NHLS President and CEO Mark McManus, Jr. entered a Memorandum of Understanding on behalf of NHLS's franchise location in Livonia, Michigan, which was later renewed.  McManus, among others, is listed as a Certifying Official for Livonia.

41.  On or about August 16, 2005, Heather Broos, Marketing Project Coordinator for NHLS's predecessor, entered a Memorandum of Understanding on behalf of NHLS's franchise location in Troy, Michigan, which was later renewed. Broos, among others, is listed as a Certifying Official for Troy.

42.  On or about that same day, Broos entered a Memorandum of Understanding on behalf of NHLS's franchise location in Grand Rapids, Michigan, which was later renewed.  Broos, among others, is listed as a Certifying Official for Grand Rapids.

43.  On or about March 3, 2009, Broos entered a Memorandum of Understanding on behalf of NHLS's franchise location in Garfield Heights, Ohio, which was later renewed.  Broos, among others, is listed as a Certifying Official for Garfield Heights.

44.  On or about March 13, 2009, Broos entered a Memorandum of

Understanding on behalf of NHLS's franchise location in Chicago, Illinois, which was later renewed.

45.     Although each NHLS location sought and received approval to submit claims through VA-ONCE, NHLS submitted such claims for all of its locations. Indeed, by or before March 2015, NHLS had integrated all administrative and compliance functions across its locations to ensure alignment in the standards of their operations.   This included not only legal and regulatory compliance and VA and SAA audit response, but also VA-ONCE enrollment certification.

46.     Despite having multiple employees approved as Certifying Officials, NHLS in fact had only a few employees certify enrollment in VA-ONCE for all locations.   Scott McLean, NHLS's Chief Administrative Officer, notified the Michigan SAA in 2016 that, at least through 2016, only NHLS employees Amanda Droba in Chicago and Christine Williams in Cleveland entered electronic enrollment certification data in VA-ONCE for all NHLS locations.

47.     Between January 2013 and August 2019, NHLS, or NHLS locations at NHLS's direction, submitted hundreds of enrollment certifications through VA-ONCE for Post-9/11 GI-Bill funded students who were less than fully funded and enrolled at the NHLS locations described in Paragraphs 33 through 37 above.

48.     Upon receiving these enrollment certifications through VA-ONCE, the VA remitted payment for student tuition and fees to Defendant NHLS.

**C.      NHLS knowingly violated the Last Payer Rule, submitted false claims, and made false statements to VA**

49.      Each electronic certification of enrollment that NHLS submitted, or caused to be submitted by one of its locations, through VA-ONCE was a claim for payment from the VA.

50.      As alleged above, VA-ONCE electronic certifications of enrollment incorporated by reference the certifications found on VA Form 22-1999, including that NHLS had "exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA."   This included, but was not limited to, the Last Payer Rule.

51.      In furtherance of meeting those requirements, schools and Certifying Officials have access to publicly available VA guidance through the VA's School Certifying Official Handbook.   As is relevant here, the Handbook cites the underlying statute, 38 U.S.C. § 3313(c), explains the Last Payer Rule, and provides a detailed example of how Certifying Officials should calculate and certify tuition and fees to the VA for a Post-9/11 GI Bill funded veteran who receives tuition scholarships.   The Handbook specifically provides:

> For periods of enrollment beginning on or after August 1, 2011, you should report the following charges:
>
> The actual net cost for in-state tuition and fees assessed by the institution for the program of education after the application of any waiver of, or reduction in, Tuition and Fees; and any scholarship, or other Federal, State, institutional or employer-

14

based aid or assistance (excluding loans and title IV funds) that is provided directly to the institution and specifically designated for the sole purpose of defraying tuition and fees.

| | |
|---|---|
| Example: Student gross in-state charges | $4,000 |
| Veteran Discount | - 400 |
| Tuition Scholarship | -2,000 |
| Title IV (ex. Pell Grant) * | 2,500 |
| General Scholarship* | 1,000 |
| **Net In-State Charges** | $1,600 |

- Denotes to exclude calculating net cost

Aid or assistance that is designated for the sole purpose of reducing a student's Tuition and Fee cost should be deducted from the net in-state charges reported to VA.

In the above example the student also has a $1,000 scholarship from a local Veterans Service Organization. The scholarship is general in nature and may be used to defray school costs such as food, housing, books, etc. Since it's not "specifically designated for the sole purpose of defraying tuition and fees", it is not deducted from the charges submitted to VA.

https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/

customer/locale/en-

US/portal/554400000001018/content/554400000149088/School-Certifying-

Official-Handbook-On-line.

15

52.    At all times relevant to this Complaint, this Handbook was available to NHLS and its Certifying Officials, including NHLS President and CEO Mark McManus, Jr.

53.    NHLS knew, or should have known, that the Last Payer Rule required NHLS and NHLS locations to first deduct the amount of scholarships, grants, or reductions in tuition provided to Post-9/11 GI Bill veteran students then to seek payment from the VA only for the net amount of tuition and fees charged to the individual student.

54.    Yet NHLS routinely provided awards specifically designated for the sole purpose of defraying tuition and fees charged to prospective students with Post-9/11 GI Bill benefits and failed to deduct those amounts before seeking payment from the VA for student tuition and fees.   NHLS designed and adjusted the amount of these awards, including scholarships, grants, discounts, and/or waivers, to eliminate a prospective student's out of pocket costs.   NHLS employees often referred to their need to "discount the program" or "scholarship the difference" when a student's tuition and fees were less than fully funded under the Post-9/11 GI Bill.

55.    For example, on October 14, 2014, an NHLS employee wrote to Student J.W. about potential coursework at Livonia, "[i]t looks like you may be 50% eligible based on a verbal from the VA so we would need to scholarship the difference."

56.     When NHLS submitted the enrollment certification through VA-ONCE for Student J.W., NHLS did not deduct the "scholarship" from the amount of tuition and fees.   Rather, NHLS sought the total cost of the course and received payment from the VA based on that misrepresentation.

57.     Similarly, on February 9, 2017, an NHLS employee wrote to someone on behalf of Student B.H. about coursework in Livonia, that "Career Services needs him to fill out this grant form.   It is because he is 70% eligible for benefits through the VA so we are discounting the program by 30%.   For the questions asked just fill out to the best of ability and please do not leave any questions blank."

58.     The first question on the grant form that Student B.H. completed was "What is your primary purpose for pursuing a tuition grant from New Horizons?" Student B.H. replied, "Post 9/11 GI Bill."

59.     When NHLS submitted the enrollment certification through VA-ONCE for Student B.H., NHLS did not deduct the "grant" from the amount of tuition and fees.   Rather, NHLS sought the total cost of the course and received payment from the VA based on that misrepresentation.

60.     Similarly, prior to enrolling Student M.J., a 70 percent funded veteran, in NHLS Chicago's Business Management Analyst/Business Administration Professional courses, NHLS employees discussed Student M.J.'s funding and the need to discount his tuition.   On November 21, 2016, NHLS employee Julie

Schrebe, in Grand Rapids, wrote, "I will need your approval to move forward with this order.   The student is eligible for 70% of his Chapter 33 entitlement. The program total is $17,500 … at 70%, NH should receive $12,250."   She went on to ask another NHLS copied on the email to submit the "NH Grant Application for this student" after obtaining approval.

61.     Student M.J. also applied for the New Horizons Computer Learning Center Career Education Program Grant.   Under its terms, receipt of the Grant obligated Student M.J. to do no more than attend class, complete assignments, and pursue unspecified professional certifications consistent with the coursework. Asked for the primary purpose in pursuing "a tuition grant from New Horizons," Student M.J. responded "Montgomery G.I. Bill is funded less than 100%."

62.     NHLS approved the grant, awarded it to Student M.J., but failed to deduct it from the amount certified to VA even though the grant was designated for the sole purpose of reducing Student M.J.'s tuition.

63.     For some veterans, NHLS simply waived the balance between the total cost of the program and the amount VA would pay on a not fully funded veteran's behalf.   For example, NHLS enrolled Student K.E., a 40% funded veteran, in its Information Technology Specialist 8 program at NHLS's Livonia location in or around May 2015.

64.     Student K.E. ultimately enrolled in seven of the eight courses in this program, which had a total cost of $20,000.   Because he was funded at 40 percent,

NHLS would receive only $8,000 from the VA for the entire program.   Prior to certifying the first course to the VA, NHLS voided the remaining debt of $12,000 owed by Student K.E.   On its Accounts Receivable Void form, the reason given for the void was "40% Eligible w/VA."   NHLS later submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for seven of the eight courses, for a total of $17,500, and was paid by VA based on that amount.

65.     For nearly every Post-9/11 GI Bill veteran who was less than fully funded, NHLS failed to deduct the tuition scholarships, grants, or discounts it offered and provided to veterans from what NHLS certified to the VA.

66.     Across the five locations described in Paragraphs 33 through 37 above, NHLS enrolled at least 288 Post-9/11 GI Bill funded veterans who received less than full funding.   For 283 of those 288 less than fully funded veteran students, NHLS certified the total cost of their tuition without deducting the tuition scholarships, grants, or discounts that it offered and provided to veteran students and applied to their accounts.

67.     By inflating the amounts that it reported to VA for those veterans, NHLS increased the amounts VA remitted to NHLS for Post-9/11 GI Bill veterans' educational assistance benefits.

68.     Defendant's electronic claims for payment for these veterans and the corresponding certifications of compliance from VA Form 22-199 incorporated by

reference were therefore false and should not have been paid.

69.     The following are additional, specific examples of false claims and certifications at the NHLS locations relevant to this Complaint.

### a.     Chicago – Student A.H.

70.     Student A.H. enrolled in NHLS's Network Systems Administrator Program in Chicago in or around November 2016.

71.     Due to his military service, Student A.H. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit.   NHLS knew that Student A.H. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding.

72.     NHLS employees internally discussed Student A.H.'s application to enroll and his funding.   On December 7, 2016, NHLS employee Julie Schrebe requested that NHLS discount the program cost for Student A.H. based on his funding level.   She wrote to NHLS employees Amanda Bowman and NHLS VP of Sales Gary Abernathy, "[i]t has now been confirmed he is only 60% eligible and, therefore, the $20,500 program total will now equate for $12,300 for NH. I will need your approval of the 60% eligibility before I move forward."   Her request was approved.

73.     NHLS's internal ledger reflects that Student A.H. was 60 percent eligible and that NHLS awarded Student A.H. tuition grants totaling $8,200.00. That is the difference between the total cost of the course ($20,500) and Student

A.H.'s Post-9/11 GI Bill benefit of 60 percent ($12,300).

74.    Yet NHLS did not first deduct the amount of the tuition grants from the amounts that it certified to the VA for Student A.H.   Rather, on the electronic enrollment certifications for Student A.H., NHLS certified the total cost of each course in the Network Systems Administrator Program as reflected in NHLS's ledger for Student A.H., even though the ledger also showed deductions for the tuition grants.

75.    NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses on the following dates:

- October 18, 2016 ($0.00) (change of address);

- November 7, 2016 ($0.00) (change in student status);

- December 14, 2016 ($7,120.00);

- February 8, 2017 ($5,575.00);

- April 19, 2017 ($1,115.00); and

- May 23, 2017 ($6,690.00).

76.    The Certifying Official was NHLS employee Julie Schrebe, who worked in Grand Rapids, Michigan.

77.    The VA paid NHLS $12,300, or 60 percent of each of these amounts, as reflected in the ledger.

78.    At no time did NHLS reveal to the VA that it had provided Student

A.H. with grants for the difference between the total cost of its courses and the amount VA would pay.

79.      As a result, the VA paid NHLS more for Student A.H.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of the tuition "grants" from the amount of tuition and fees it certified in VA-ONCE.

       **b.      Grand Rapids – Student J.B.**

80.      Beginning in approximately March 2015, Student J.B. enrolled in NHLS's Information Technology Specialist 8 courses at NHLS's Grand Rapids location.

81.      Due to his military service, Student J.B. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 70 percent of the maximum allowed benefit.   NHLS knew that Student J.B. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding.

82.      NHLS's own records reflect that Student J.B. enrolled in at least six courses as part of this program with a total cost of $20,000 and was 70 percent eligible.

83.      On the electronic enrollment certifications for Student J.B., NHLS certified the total cost of each course in the Information Technology Specialist 8 program, as reflected in NHLS's ledger and VA-ONCE enrollment certifications.

84.      NHLS submitted, or caused to be submitted, electronic enrollment

certifications to the VA requesting payment of federal funds for these courses on the following dates:

- March 3, 2015 ($2,500.00);

- April 7, 2015 ($7,500.00);

- August 18, 2015 ($2,500.00);

- March 7, 2016 ($2,500.00);

- September 12, 2016 ($2,500.00);

- September 27, 2016 ($2,500.00); and

- October 6, 2016 (change in student status);

85. The Certifying Officials were NHLS employee Fay Bazzy, who worked in Detroit, NHLS employee Ashley Peterson, and NHLS employee Sue Ann Law.

86. The VA paid NHLS $14,000, or 70 percent of the full cost of tuition for the Information Technology Specialist 8 program.

87. NHLS's ledger reflects that it voided the $6,000.00 balance owed by the student noting, "Void (Student only 70% eligible, did not pay 30%)." NHLS did not seek payment of the remaining 30 percent tuition cost from Student J.B.

88. NHLS had no intention of recouping any of the money owed by the veteran.

89. At no time did NHLS reveal to the VA that it had reduced Student J.B.'s tuition by relieving him of his obligation to pay the difference between the

23

total cost of its courses and the amount VA would pay.

90.     As a result, the VA paid NHLS more for Student J.B.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of tuition waiver from the amount of tuition and fees it certified in VA-ONCE.

### c.     Livonia – Student S.M.

91.     Beginning in approximately June 2015, Student S.M. enrolled in NHLS's Business Operations Professional program at NHLS's Livonia location.

92.     Due to her military service, Student S.M. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 50 percent of the maximum allowed benefit.   NHLS knew that Student S.M. was eligible for Post-9/11 GI Bill benefits and knew the amount of funding, as reflected in its own records.

93.     Student S.M. ultimately enrolled in at least three courses in this program, with a total cost of $7,500.

94.     NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses on the following dates:

- June 4, 2015 ($2,500.00);

- July 7, 2015 ($2,500.00); and

- August 11, 2015 ($2,500.00).

95.     The Certifying Official was NHLS employee Laura Smith.

96.    The VA paid NHLS $3,750.00 for Student S.M.'s tuition and fees for these courses.

97.    NHLS's ledger reflects that it awarded Student S.M. a grant for $3,750.00, which is the difference between the total cost of the program and the amount of Student S.M.'s funding from the VA.

98.    At no time did NHLS reveal to the VA that it reduced the amount of Student S.M.'s tuition by awarding her a "grant" for the difference between the total cost of its courses and the amount VA would pay.

99.    As a result, the VA paid NHLS more for Student S.M.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of the tuition "grant" from the tuition and fees it certified in VA-ONCE.

### d.    Troy – Student B.K.

100.    Beginning in approximately March 2017, Student B.K. enrolled in NHLS's Security IT Associate course at NHLS's Troy location.

101.    Due to his military service, Student B.K. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit.   NHLS knew that Student B.K. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding as shown in its internal ledger.

102.    NHLS awarded Student B.K. the Career Education Program Grant sometime shortly after March 9, 2017.

103.   NHLS's records reflect that Student B.K. enrolled in the Security IT Associate course and received a grant of $3,000, which is the difference between the total cost of the course ($7,500) and Student B.K.'s Post-9/11 GI Bill benefit of 60 percent ($4,500).

104.   NHLS did not deduct the amount of that grant from the tuition amount that it certified to the VA even though the grant was designated for the sole purpose of reducing Student B.K.'s tuition.   Rather, NHLS certified the total cost of the course without deduction.

105.   NHLS submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for this course on March 22, 2017, for the total cost of the course ($7,500).   The Certifying Official was NHLS employee Julie Schrebe.

106.   VA paid NHLS 60 percent of that amount, $4,500.

107.   Beginning in December 2017, Student B.K. also enrolled in NHLS's Network Systems Administrator Program at its Troy location, which is also reflected in NHLS's internal ledger.

108.   Prior to that, NHLS internally discussed Student B.K.'s application for this program and his eligibility for VA benefits.   On October 2, 2017, Julie Schrebe, a Student Affairs Manager and Certifying Official, sent an email to a Career Consultant and NHLS's Vice President of Admissions, Steve Appleby, writing, "[Student B.K.] is only 60% eligible for benefits, so Steve will have to

approve a 40% discount on program costs.   I'll also need a Grant Application and

a 22-1995 application completed along with the SLP and Enrollment Agreement."

Steve replied asking for the "retail and discount amount of the program," to which

the Career Consultant replied "$16,211.25 after discount it would be $9726.75."

Steve Appleby approved the discount immediately thereafter.

109.   These same figures are reflected in NHLS's internal ledger.   That

ledger shows that Student B.K. enrolled in the NSAP program with a total of four

courses and received a grant of $6,484.50, which is the difference between the total

cost of the course ($16,211.25) and Student B.K.'s Post-9/11 GI Bill benefit of 60

percent ($9,726.75).

110.   Again, NHLS did not first deduct the amount of the grant from the

amounts it certified to the VA, even though the grant was designated for the sole

purpose of reducing Student B.K.'s tuition.   Instead, NHLS certified the total cost

of the courses.

111.   NHLS submitted, or caused to be submitted, electronic enrollment

certifications to the VA requesting payment of federal funds for these courses as

follows:

- December 6, 2017 ($6,518.75) amended March 1, 2018;

- March 1, 2018 ($2,058.75);

- March 6, 2018 (adjustment change in student status); and

- March 6, 2018 ($7,633.75).

27

112.   The Certifying Official was NHLS employee Amanda Droba in Chicago.

113.   At no time did NHLS reveal to the VA that it had awarded grants to Student B.K. to cover the difference between the total cost of the two courses and Student B.K.'s eligibility for benefits.

114.   As a result, the VA paid NHLS more for Student B.K.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amounts of the "grants" from the tuition and fees it certified in VA-ONCE.

### e.    Garfield Heights – Student N.R.

115.   Beginning in approximately September 2016, Student N.R. enrolled in NHLS's Information Technology Specialist 8 courses at NHLS's Garfield Heights location.

116.   Due to his military service, Student N.R. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit.   NHLS knew that Student N.R. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding as shown in its internal ledger.

117.   NHLS's records reflect that Student N.R. enrolled in four courses as part of this program and received a grant of $8,000, which is the difference between the total cost of the course ($20,000) and Student N.R.'s Post-9/11 GI Bill benefit of 60 percent ($12,000).   There is no record of Student N.R. applying for a

grant in his enrollment application or NHLS student file.

118.   NHLS did not first deduct the amount of the grant from the tuition amounts that it certified to the VA, even though the grant was designated for the sole purpose of reducing Student N.R.'s tuition.   Rather, NHLS certified the total cost of the courses without deduction.

119.   NHLS submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for these courses on July 27, 2016, for the total program cost of $20,000.

120.   VA paid NHLS 60 percent of that amount, $12,000.

121.   The Certifying Official was NHLS employee Christine Williams.

122.   NHLS did not seek payment from Student N.R. for any amounts in excess of his Post-9/11 GI Bill benefit, and Student N.R. paid nothing out of pocket for these courses.

123.   At no time did NHLS reveal to the VA that it had provided Student N.R. with a grant for the difference between the total cost of its courses and the amount VA would pay.

124.   As a result, the VA paid NHLS more for Student N.R.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of the "grant" from the tuition and fees it certified in VA-ONCE.

125.   Like these specific examples, NHLS submitted false claims for at

least 283 Post 9/11 GI Bill funded veterans during the course of this scheme.   As a result, VA remitted payment to NHLS for Post-9/11 GI Bill education assistance benefits to which it was not entitled.[1]

**D.      Defendant's false claims and false statements were material to VA's decision to pay the claims**

126.    Materiality means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

127.    The VA would not have paid Post-9/11 GI Bill tuition and fees to NHLS had it known that NHLS (1) falsely inflated the amount of tuition and fees it claimed on the electronic enrollment certifications and (2) falsely claimed compliance with its obligation to exercise reasonable diligence in complying with Title 38, including the Last Payer Rule.

128.    The VA, or the SAAs on VA's behalf, performs on-site compliance surveys at schools across the country.   The purpose of these surveys is to ensure that payments made by the VA were based on correct enrollment information furnished by the school and to ensure that schools understand and follow the requirements of the law.   In these surveys, representatives from the VA review small samples of randomly selected student files for veterans who were fully funded and not fully funded under the Post-9/11 GI Bill.   After the on-site review, the VA provides its findings in writing to the school with any identified

---

1 The United States will serve Defendant with this list of veterans.

discrepancies from the survey.

129.   The VA performed such surveys at NHLS schools between January 2013 and August 2019 and identified violations of the Last Payer Rule.   Where it identified deficiencies, the VA directed NHLS, or the NHLS schools, to remit to the VA any overpayment.   By doing so, NHLS knew that its practice of inflating the certified tuition and fees was wrong and that the VA would not pay Post-9/11 GI Bill benefits to NHLS where the school failed to deduct tuition scholarships, grants, or discounts from the amount certified in VA-ONCE, in violation of the Last Payer Rule.

130.   For example, on or about May 7, 2017, the VA notified NHLS's Chicago location that it had completed a compliance survey and identified violations in multiple student files where NHLS had failed to report accurate tuition and fees to the VA.   In each instance, the VA noted that NHLS failed to deduct the amount of a tuition grant awarded to the student from the tuition costs certified and submitted to the VA.   For each student, the VA noted in the survey findings that it processed a school debt with the amount of the overpayment.

131.   One student included in the May 7, 2017 compliance survey was Student M.J., from Paragraph 60 above.   The VA noted in its survey findings that NHLS failed to deduct the amount of tuition grants awarded to Student M.J. prior to certifying tuition and fees to the VA and that the VA had processed a school debt for $3,675.00.

31

132.   Similarly, the VA notified NHLS's Livonia location on July 31, 2018, that it had recently completed a compliance survey and identified violations in multiple student files where NHLS had failed to report accurate tuition and fees to the VA.   In each instance, the VA noted that NHLS failed to deduct the amount of a tuition grant awarded to the student from the tuition and fees certified and submitted to the VA.

133.   For example, one student included in the July 31, 2018 compliance survey was Student B.H., from Paragraph 57 above.   The VA noted that NHLS failed to deduct the amount of a grant awarded to Student B.H. from the amount of tuition and fees certified in VA-ONCE for a term between March and May of 2017.   The VA created a school debt for NHLS in the amount of the overpayment.

## COUNT I: FALSE OR FRAUDULENT CLAIMS

### VIOLATION OF THE FALSE CLAIMS ACT
(31 U.S.C. § 3729(a)(1)(A))

134.   The United States incorporates by reference the allegations contained in paragraphs 1 through 133.

135.   From at least January 2013 through August 2019, Defendant NHLS knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval.   More specifically, Defendant submitted electronic enrollment certifications through VA-ONCE in which Defendant (1) falsely inflated the amount of tuition and fees it claimed for Post-9/11 GI Bill veterans; and (2) falsely certified that it had exercised reasonable diligence in

32

meeting Title 38's requirements, when it had not done so.

136.   The United States suffered damages as a result of Defendant's false or fraudulent claims.

137.   Defendant is liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendant.

## COUNT II: FALSE STATEMENTS

### VIOLATION OF THE FALSE CLAIMS ACT
(31 U.S.C. § 3729(a)(1)(B))

138.   The United States incorporates by reference the allegations contained in paragraphs 1 through 133.

139.   From at least January 2013 through August 2019, Defendant knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.   More specifically, Defendant submitted electronic enrollment certifications through VA-ONCE in which Defendant (1) falsely inflated the amount of tuition and fees it claimed for Post-9/11 GI Bill veterans; and (2) falsely certified that it had exercised reasonable diligence in meeting Title 38's requirements, when it had not done so.

140.   The United States suffered damages as a result of Defendant's false

records or statements.

141.   Defendant is liable to the United States for treble damages under the

FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to

$11,000 (as revised by 28 C.F.R. Part 85) for each false claim presented or caused

to presented by Defendant.

## COUNT III: PAYMENT UNDER MISTAKE OF FACT

142.   The United States incorporates by reference the allegations contained

in paragraphs 1 through 133.

143.   As a consequence of the acts described above, the United States paid

money to Defendant NHLS from at least January 2013 through August 2019, based

on a mistaken belief that NHLS had complied with federal rules and regulations

governing Post-9/11 GI Bill benefits.   The United States paid more money to

Defendant than it would have had the United States known that Defendant was not

in compliance with the Last Payer Rule.

144.   The United States suffered damages as a result of payments to

Defendant under mistake of fact, and Defendant is liable to make restitution to the

United States for an amount to be determined at trial.

## COUNT IV: UNJUST ENRICHMENT

145.   The United States incorporates by reference the allegations contained

in paragraphs 1 through 133.

146.   From at least January 2013 through August 2019, the United States

paid Post-9/11 GI Bill educational assistance benefits to Defendant NHLS in amounts exceeding what Defendant knew or should have known it was actually entitled to receive.

147.   Defendant retained or used monies from the United States for Post-9/11 GI Bill educational assistance benefits to which Defendant was not entitled and was therefore unjustly enriched.

148.   By directly or indirectly obtaining federal funds from VA to which it was not entitled, Defendant was unjustly enriched at the expense of the United States and is liable to account and pay to the United States an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court declare a judgment in favor of the United States and against Defendant as follows:

a.      On Counts I and II, against Defendant for the amount of the United States' damages, trebled as required by law, and such costs and civil penalties as required by law, together with such further relief as may be just and proper.

b.      On Count III for payment under mistake of fact, against Defendant for an amount equal to the money paid by the United States to Defendant, or on Defendant's behalf, to which Defendant was not entitled, plus interest, costs, and expenses.

c.      On Count IV for unjust enrichment, against Defendant for the

damages sustained and/or amounts by which Defendant retained monies received or benefitted from reimbursements paid by the United States to which Defendant was not entitled, plus interest, costs, and expenses.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DAWN N. ISON
United States Attorney

JOHN SPACCAROTELLA
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0215
John.spaccarotella@usdoj.gov

JAMIE ANN YAVELBERG
ALLISON CENDALI
CHRISTOPHER G. WILSON
Attorneys, Civil Division
175 N St., N.E.
Washington, D.C. 20002
(614) 255-1630
Christopher.G.Wilson@usdoj.gov

Counsel for the United States of America

Dated:   December 16, 2022