UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

NH LEARNING SOLUTIONS
CORPORATION,

        Defendant.

_____

Civil Case No. 2:22-cv-13045-LJM-CI

**Demand For Jury Trial**

## AMENDED COMPLAINT OF THE UNITED STATES
## FOR VIOLATIONS OF THE FALSE CLAIMS ACT

The United States of America brings this action against NH Learning

Solutions Corporation ("NHLS") to recover treble damages and civil penalties for

violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA").   For its

Amended Complaint, the United States alleges as follows:

## INTRODUCTION

1.     The Post-9/11 GI Bill, 38 U.S.C. §§ 3301–27, provides educational

assistance benefits for eligible veterans and members of the armed services who

enroll in qualified education or training programs.   The Department of Veterans

Affairs ("VA") remits tuition and fees directly to schools and provides veteran

students a monthly housing allowance and stipend for books and supplies.   These

benefits are part of our promise to support veterans after honorably serving our

country.

2.    NHLS profited handsomely off this country's promise to those veterans by inflating the reimbursement it sought from the VA for courses provided to Post-9/11 GI Bill funded veteran students.

3.    For veterans, the true total cost of NHLS's courses was whatever the VA would reimburse based on the veteran's educational assistance benefits.   So, for a veteran receiving a maximum benefit of 100 percent tuition and fees (referred to as a "fully funded veteran"), NHLS charged the VA the total cost of the course, and VA would pay it.   For a veteran receiving less than the maximum benefit (referred to as a "less than fully funded veteran"), NHLS still charged VA the total cost of the course, but VA would reimburse only up to the amount of the veteran's available educational assistance benefit.   NHLS then discounted the remaining balance owed by those veterans through unreported grants, scholarships, or outright waivers, making the true cost of the course whatever VA would pay.

4.    Throughout its participation in the Post-9/11 GI Bill program NHLS knowingly inflated the amount of reimbursement it sought from the VA for student tuition for hundreds of veterans, in violation of 38 U.S.C. § 3313(g)(3)(A), the so-called "Last Payer Rule".   NHLS did so despite certifying on those same claims that it was in compliance with the requirements found in Title 38 of the U.S. Code, including but not limited to the Last Payer Rule.

5.    These claims for payment and the corresponding certifications were

2

therefore false.   As a result, the VA paid NHLS millions of dollars for veteran

tuition and fees that NHLS was not entitled to receive.

6.    The VA would not have remitted Post-9/11 GI Bill funds to NHLS

had it known that these claims and certifications were false.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter and all parties to

this action pursuant 28 U.S.C. §§ 1331 and 1345, because this is a civil action by

the United States that arises under the FCA and federal common law, and all

claims in the action form part of the same case or controversy.

8.    The Court has personal jurisdiction over Defendant pursuant to 31

U.S.C. § 3732(a) because Defendant has transacted business, and committed acts

proscribed by the FCA, within this District.

9.    Venue is proper in the Eastern District of Michigan under 28 U.S.C.

§§ 1391(a)-(c), 1395(a), and 31 U.S.C. § 3732(a), because Defendant is located,

resides, does business, or committed the acts at issue in this district.

## STATUTE OF LIMITATIONS

10.    This action was originally brought less than three years after the date

when facts material to the right of action were known or reasonably should, or

could, have been known by the official of the United States charged with

responsibility to act in the circumstances.   The appropriate official of the United

States is within the Civil Division of the U.S. Department of Justice, the office

with authority to file suit under the FCA.   While the actual date is much later in time, the very earliest date when facts material to the right of action were known or reasonably should, or could, have been known by the appropriate official within the Civil Division was no earlier than April 29, 2020, when the Civil Division received a referral from VA's Office of the Inspector General and opened its investigation.

11.    NHLS also executed a tolling agreement and extensions of that agreement with the United States that tolled the running of the statute of limitations for causes of action under the FCA and common law from May 24, 2021, through November 21, 2022.

12.    The United States' FCA claims in this matter are timely under 31 U.S.C. § 3731(b)(2), and the United States' common law claims in this matter are timely under 28 U.S.C. § 2415 and 2416(c).

## THE PARTIES

13.    Plaintiff United States of America brings this action on behalf of the VA, which regulates the provision of educational assistance benefits under the Post-9/11 GI Bill.

14.    Defendant NHLS is a Michigan domestic for profit corporation with its principal place of business at 14115 Farmington Road, Livonia, Michigan 48154.   Until 2014, NHLS was known as New Horizons Great Lakes Holding Corporation, which operated under an assumed name of New Horizons Computer

Learning Centers.

15.     Until at least 2020, NHLS owned at least fifteen franchise licenses from New Horizons, Inc. to sell and deliver training throughout the Midwest and Northeast United States.

16.     Under these franchise licenses, NHLS provided instructor-led training, live and online, in the use of business applications, business skills, information technology (IT), leadership and management and business process optimization at its training centers located throughout the Northeast and Midwest, all of which operated under the trade name New Horizons Computer Learning Centers.

17.     The NHLS locations relevant to this Amended Complaint include Chicago, Illinois; Grand Rapids, Michigan; Livonia, Michigan; Troy, Michigan; and Garfield Heights, Ohio.   NHLS owns and controls the operations of each of these locations through other companies it also owns and controls, including but not limited to NH Chicago, LLC a/k/a New Horizons CLC of Chicago; NH Cleveland, LLC a/k/a New Horizons Computer Learning Centers of Garfield Heights; New Horizons – Grand Rapids, LLC a/k/a New Horizons Computer Learning Centers of Grand Rapids; M & J, LLC a/k/a New Horizons Computer Learning Centers of Michigan.

18.     On December 16, 2022, the United States filed its original Compliant in this matter, notified NHLS of the filing by email communication, and provided

NHLS with a courtesy copy of the complaint.   On that same day, NHLS's President and CEO, Mark McManus Jr., filed a Certificate of Dissolution on behalf of NHLS with Michigan's Department of Licensing and Regulatory Affairs.

## POST-9/11 GI BILL

19.     The Post-9/11 GI Bill provides financial support to service members, veterans, and eligible dependents who attend education or training programs taken at accredited colleges or universities and at certain schools or programs that do not grant college degrees, such as NHLS.   38 U.S.C. §§ 3301–27.

20.     Non-accredited educational institutions seeking to provide VA-eligible programs must first apply to their state's State Approving Agency (SAA), which oversees approval and compliance with federal guidelines.   *See* 38 U.S.C. § 3676(a).   SAAs are independent state agencies authorized by federal statute and are responsible for ensuring the quality and integrity of programs of education and training for the use of Post-9/11 GI Bill benefits and approving such programs to receive VA benefits.   38 U.S.C. § 3671.

21.     Non-accredited educational institutions must meet the requirements of 38 U.S.C. § 3676 ("Approval of nonaccredited courses") and 38 C.F.R. § 21.4254 ("Nonaccredited courses") for course approval and are subject to the limitations set forth in 38 U.S.C. § 3680A ("Disapproval of enrollment in certain courses") and 38 C.F.R. § 21.4201 ("Restrictions on enrollment; percentage of students receiving financial support").

6

22.     "Nonaccredited courses are courses which are not approved as accredited courses and which are offered by a public or private, profit or nonprofit, educational institution."   38 C.F.R. § 21.4254.   An educational institution that wishes to enroll veterans in nonaccredited courses will submit a written application to the appropriate SAA, which must include, among other things, a   "[d]etailed schedule of fees, charges for tuition, books, supplies, tools, student activities, laboratory fees, service charges, rentals, deposits, and all other charges."   38 U.S.C. § 3676(b)(8); 38 C.F.R. § 21.4254(b)(8).

23.     For eligible individuals, the Post-9/11 GI Bill pays up to 100 percent of their tuition and fees, which the VA pays directly to the school.   38 U.S.C. § 3313(h) (provision entitled, "Payment of Established Charges to Educational Institutions"); 38 C.F.R. § 21.9505 ("Established charges means the actual charge for tuition and fees that similarly circumstanced nonveterans enrolled in the program of education are required to pay.").   Students who are not active-duty service members also receive a monthly housing allowance and stipend for books and supplies.   *See* 38 U.S.C. §§ 3313(g)(3).

24.     As set forth in VA's publicly available School Certifying Official Handbook ("SCO Handbook"), "[t]uition is the actual established charges for tuition the student is required to pay. Tuition is defined in the school's catalog or supplement and listed as tuition on the school's billing statement or invoice." "Fees are mandatory charges (other than tuition, room, and board) applied by the

7

school for pursuit of an approved program of education," such as," health

premiums, freshman fees, graduation fees, and lab fees."

https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/

customer/locale/en-

US/portal/554400000001018/content/554400000149088/School-Certifying-

Official-Handbook-On-line#Responsibilities%20for%20Reporting.

25.     Where a school charges different tuition rates depending on a

students' state residency, the school should report as "Tuition and Fees," the in-

state tuition rate in the "Tuition and Fees" field.    *Id.*    Otherwise, the school

reports the "Tuition and Fees" approved by the appropriate SAA in accordance

with 38 C.F.R. § 21.4254(b).

26.     The amount of an eligible veteran's benefits, including tuition and

fees, is based on her time in service.    *See* 38 U.S.C. §§ 3311(b), 3313(c),

3313(g)(3)(A)(iv).    For example, an individual who served an aggregate of at least

36 months on active duty would be entitled to a benefit of up to 100 percent tuition

and fees, subject to certain reductions described in 38 U.S.C. § 3313(c)(1), if

applicable; an individual who served an aggregate of at least 30 months but less

than 36 months on active duty and who is not service disabled would be entitled to

a benefit of up to 90 percent tuition and fees, subject to certain reductions

described in 38 U.S.C. § 3313(c)(1), if applicable.    *See* 38 U.S.C. §§ 3313(c)(1)

and (2).

27.    For payments made under the Post-9/11 GI Bill, the VA is the payer of last resort.   That is, the VA pays the "actual net cost for in-state tuition" charged by a school after it has applied "any waiver of, or reduction in, Tuition and Fees; and any scholarship, or other Federal, State, institutional or employer-based aid or assistance."   *Id.* § 3313(g)(3)(A)(i).   This is known as the "Last Payer Rule."

28.    For example, where a less than fully funded veteran who is eligible to receive 60 percent of the full benefit enrolls in a non-college degree course costing $100, the school should report to the VA the actual net cost of $100 if the veteran does not also qualify for any tuition reduction, scholarship, or other aid.   The VA would then pay $60 to the school, and the veteran student would pay $40 out of pocket.   If, for the same course and the same veteran, the school reduced the tuition by $40, the school should report and certify the actual net cost of $60.   The VA would then pay $36 to the school (or 60 percent of the $60 net cost), and the veteran would still owe $24 (or 40 percent of the $60 net cost).   Importantly, a less than fully funded veteran will always pay something out of pocket.

29.    The VA processes reimbursement claims from educational institutions for tuition and fees in VA-ONCE, an internet-based system.   Educational institutions must designate at least one school certifying official who is authorized to submit claims through VA-ONCE.

30.    After receiving approval to participate in VA education benefits

9

programs, the educational institution submits claims for payment of federal funds to the VA using VA-ONCE.   Each claim is an electronic certification that the eligible student is enrolled in a particular program or course of study.   The claim also includes the name of the program, the clock hours for that particular program, the dates of enrollment, and the amount of tuition and fees charged.

31.    To gain access to VA-ONCE, an approved school signs a memorandum of understanding in which it certifies that it will "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system is subject to "all duties and liabilities pertaining to educational institutions," including with respect to "all certifications" and "any other provisions of law or regulations that apply."

32.    Each electronic claim for payment submitted by the school is certified, expressly incorporating by reference the certifications found on VA Form 22-1999, including: (a) that the school "has exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA;" (b) that it "agrees to report promptly to VA any enrollment change and any change due to unsatisfactory progress, conduct, or attendance;" and (c) that "the 85-15 ratio requirements [i.e., the ratio of enrolled students who receive tuition assistance from the VA or the school and those who do not] have been satisfied."

33.      After receiving a school's claim through VA-ONCE, the VA

processes and pays automatically based on the certifications accompanying the

claim.

## THE FALSE CLAIMS ACT

34.      The FCA provides, in part, that any person who individually, or in

concert with others, knowingly presents, or causes to be presented, a false claim

for payment or approval, or makes, uses, or causes to be made or used a false

statement that is material to a claim for payment or approval, is liable to the United

States for penalties and treble damages.   *See* 31 U.S.C. §§ 3729(a)(1)(A)-(C).

35.      Knowingly means that the person: (1) had actual knowledge of the

information; (2) acted in deliberate ignorance of the truth or falsity of the

information; or (3) acted in reckless disregard of the truth or falsity of the

information.   *See* 31 U.S.C. §§ 3729(b)(1).   The person need not have acted with

specific intent to defraud the United States to be liable under the FCA.   *Id*.

36.      As is relevant here, a "claim" under the False Claims Act includes

"any request or demand, whether under a contract or otherwise, for money or

property . . . that is presented to an officer, employee, or agent of the United

States."   31 U.S.C. § 3729(b)(2)(A)(i).

## FACTUAL ALLEGATIONS

**A.      VA approved NHLS's locations to enroll Post-9/11 GI Bill-funded
         veterans and to certify enrollment through VA-ONCE**

37.      Each NHLS location, or NHLS on their behalf, sought and received

11

approval to enroll Post-9/11 GI Bill funded students in its courses.

38.    On or after October 1, 2003, the VA approved NH Chicago, LLC's application to enroll in courses students who received Post-9/11 GI Bill benefits. NH Chicago LLC's application was submitted to the State of Illinois SAA under NH Chicago LLC's trade name, New Horizons CLC of Chicago, by then-General Manager, Steven Talbott, on or about April 18, 2003.   The VA assigned this location a facility code of 25-0547-13.

39.    On or about July 8, 2005, the VA approved New Horizons Computer Learning Center of Michigan's application to enroll in courses at NHLS's Grand Rapids location students who received Post-9/11 GI Bill Benefits.   The approval had an effective date of December 14, 2004.   New Horizons Computer Learning Center of Michigan's original application was submitted on or before June 6, 2005, to the State of Michigan SAA by Mark McManus, Jr., as President and CEO.   He was also listed as a Certifying Official.   The VA assigned the Grand Rapids location a facility code of 25-0282-22.

40.    On or after February 27, 2004, the VA received and approved New Horizons Computer Learning Center of Michigan's application to enroll in courses at NHLS's Livonia location students who received Post-9/11 GI Bill Benefits. The approval had an effective date of October 21, 2003.   New Horizons Computer Learning Center of Michigan's original application was submitted before November 6, 2003, to the State of Michigan SAA and later resubmitted on or about

January 26, 2004, to add and withdraw certain programs from the application.

The VA assigned the Livonia location a facility code of 25-1551-22.

41.     On or about August 15, 2005, the VA approved New Horizons

Computer Learning Center of Michigan's application to enroll in courses at

NHLS's Troy location students who received Post-9/11 GI Bill Benefits.   New

Horizons Computer Learning Center of Michigan's original application was

submitted prior to August 4, 2005, to the State of Michigan SAA by Mark

McManus, Jr., as President and CEO.   The VA assigned the Troy location a

facility code of 25-0281-22.

42.     On or about September 17, 2003, the VA approved New Horizons

Computer Learning Center of Cleveland's application to enroll in courses at

NHLS's Garfield Heights location students who received Post-9/11 GI Bill

Benefits.   New Horizons Computer Learning Center of Michigan's original

application was submitted before April 18, 2003, to the State of Ohio SAA and

was effective as of that date.   The VA assigned the Garfield Heights location a

facility code of 25-5629-35.

43.     Between January 2013 and August 2019, these NHLS locations, or

NHLS on their behalf, submitted additional applications to the appropriate SAA as

NHLS updated and/or made changes to its course offerings, including but not

limited to, offering non-college degree courses.   These applications were also

approved.

13

**B.      NHLS submitted VA-ONCE electronic enrollment certifications for its locations**

44.      Each NHLS location described in Paragraphs 38 through 42 above also executed a VA-ONCE Memorandum of Understanding in which it certified that the school would "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system was subject to "all duties and liabilities pertaining to educational institutions," including with respect to "all certifications" and "any other provisions of law or regulations that apply."   A current version of the VA-ONCE Memorandum of Understanding may be found at https://www.benefits.va.gov/GIBILL/resources/education_resources/mou.html.

45.      Each VA-ONCE Memorandum of Understanding executed by the NHLS locations expressly incorporated those requirements into each electronic certification of enrollment "even though the provisions of those laws, regulations, or requirements do not appear on the certifications created by the VA-ONCE program."

46.      On or about November 3, 2004, NHLS President and CEO Mark McManus, Jr. entered a Memorandum of Understanding on behalf of NHLS's franchise location in Livonia, Michigan, which was later renewed.   McManus, among others, is listed as a Certifying Official for Livonia.

47.      On or about August 19, 2005, Heather Broos, Marketing Project Coordinator for NHLS's predecessor, entered a Memorandum of Understanding on

14

behalf of NHLS's franchise location in Troy, Michigan, which was later renewed.
Broos, among others, is listed as a Certifying Official for Troy.

48.    On or about that same day, Broos entered a Memorandum of
Understanding on behalf of NHLS's franchise location in Grand Rapids, Michigan,
which was later renewed.   Broos, among others, is listed as a Certifying Official
for Grand Rapids.

49.    On or about March 3, 2009, Broos entered a Memorandum of
Understanding on behalf of NHLS's franchise location in Garfield Heights, Ohio,
which was later renewed.   Broos, among others, is listed as a Certifying Official
for Garfield Heights.

50.    On or about March 13, 2009, Broos entered a Memorandum of
Understanding on behalf of NHLS's franchise location in Chicago, Illinois, which
was later renewed.

51.    Although each NHLS location sought and received approval to submit
claims through VA-ONCE, NHLS submitted such claims for all of its locations.
Indeed, by or before March 2015, NHLS had integrated all administrative and
compliance functions across its locations to ensure alignment in the standards of
their operations.   This included not only legal and regulatory compliance and VA
and SAA audit response, but also VA-ONCE enrollment certification.

52.    Despite having multiple employees approved as Certifying Officials,
NHLS in fact had only a few employees certify enrollment in VA-ONCE for all

locations. Scott McLean, NHLS's Chief Administrative Officer, notified the Michigan SAA in 2016 that, at least through 2016, only NHLS employees Amanda Droba in Chicago and Christine Williams in Cleveland entered electronic enrollment certification data in VA-ONCE for all NHLS locations.

53.     Between January 2013 and August 2019, NHLS, or NHLS locations at NHLS's direction, submitted hundreds of enrollment certifications through VA-ONCE for Post-9/11 GI-Bill funded students who were less than fully funded and enrolled at the NHLS locations described in Paragraphs 38 through 42 above.

54.     Upon receiving these enrollment certifications through VA-ONCE, the VA remitted payment for student tuition and fees to Defendant NHLS.

**C.     NHLS knowingly violated the Last Payer Rule, submitted false claims, and made false statements to VA**

55.     Each electronic certification of enrollment that NHLS submitted, or caused to be submitted by one of its locations, through VA-ONCE was a claim for payment from the VA.

56.     As alleged above, VA-ONCE electronic certifications of enrollment incorporated by reference the certifications found on VA Form 22-1999, including that NHLS had "exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA." This included, but was not limited to, the Last Payer Rule.

57.     In furtherance of meeting those requirements, schools and Certifying

16

Officials have access to publicly available VA guidance through the VA's SCO

Handbook.   As is relevant here, the SCO Handbook makes clear that all

educational institutions approved to offer non-college degree programs of

education, such as NHLS, must comply with 38 U.S.C. § 3313(g)'s Last Payer

Rule, stating that "[i]ndividuals pursuing an approved program at an NCD [non-

college degree] school received the lesser of the following: the actual net cost for

in-state tuition and fees after the application of any waiver, scholarship, aid, or

assistance [other than loans and funds provided under section 401(b) of the Higher

Education Act of 1965], or $17,500 for the academic year beginning on August 1,

2011."

    58.    The SCO Handbook also provides a detailed example of how

Certifying Officials should calculate and certify tuition and fees to the VA for a

Post-9/11 GI Bill funded veteran who receives tuition scholarships:

> For periods of enrollment beginning on or after August 1,
> 2011, you should report the following charges:
>
> The actual net cost for in-state tuition and fees assessed by the
> institution for the program of education after the application of
> any waiver of, or reduction in, Tuition and Fees; and any
> scholarship, or other Federal, State, institutional or employer-
> based aid or assistance (excluding loans and title IV funds) that
> is provided directly to the institution and specifically designated
> for the sole purpose of defraying tuition and fees.

| | |
|---|---|
| Example: Student gross in-state charges | $4,000 |
| Veteran Discount | - 400 |
| Tuition Scholarship | -2,000 |
| Title IV (ex. Pell Grant) * | 2,500 |
| General Scholarship* | 1,000 |
| **Net In-State Charges** | $1,600 |

- Denotes to exclude calculating net cost

Aid or assistance that is designated for the sole purpose of reducing a student's Tuition and Fee cost should be deducted from the net in-state charges reported to VA.

In the above example the student also has a $1,000 scholarship from a local Veterans Service Organization. The scholarship is general in nature and may be used to defray school costs such as food, housing, books, etc. Since it's not "specifically designated for the sole purpose of defraying tuition and fees", it is not deducted from the charges submitted to VA.

https://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ssnew/help/

customer/locale/en-

US/portal/554400000001018/content/554400000149088/School-Certifying-

Official-Handbook-On-line.

59.    At all times relevant to this Amended Complaint, this Handbook was

available to NHLS and its Certifying Officials, including NHLS President and

CEO Mark McManus, Jr.

18

60.     Moreover, SAAs made NHLS aware of its obligation to comply with the Last Payer Rule in correspondence to NHLS approving its non-college degree courses.   For example, in an October 5, 2015, "Certificate of Approval for Nonaccredited NCD Courses" sent to NHLS for its location in Chicago, the Illinois SAA stated, "ALL TUITION & FEE-BASED SCHOLARSHIPS or GRANTS: Must be deducted from the net in-state charges reported to the Veterans Administration (VA)," and reminded NHLS of its obligation to submit all "tuition and fee information to the Illinois State Approving Agency when published."   The Certificate of Approval was addressed to NHLS employee and Certifying Official Amanda Droba.   On March 17, 2017, the Illinois SAA sent NHLS, again addressed to Certifying Official Amanda Droba, another "Certificate of Approval for Nonaccredited NCD Courses" with identical language regarding NHLS's obligation to deduct tuition-based scholarships and grants from the tuition and fee amounts reported to VA on its claims.

61.     NHLS knew, or should have known, that the Last Payer Rule required NHLS and NHLS locations to first deduct the amount of scholarships, grants, or reductions in tuition provided to Post-9/11 GI Bill veteran students then to seek payment from the VA only for the net amount of tuition and fees charged to the individual student.

62.     Yet NHLS routinely provided awards specifically designated for the sole purpose of defraying tuition and fees charged to prospective students with

Post-9/11 GI Bill benefits and failed to deduct those amounts before seeking payment from the VA for student tuition and fees.   NHLS designed and adjusted the amount of these awards, including scholarships, grants, discounts, and/or waivers, to eliminate a prospective student's out of pocket costs.   NHLS employees often referred to their need to "discount the program" or "scholarship the difference" when a student's tuition and fees were less than fully funded under the Post-9/11 GI Bill.

63.    For example, on October 14, 2014, an NHLS employee wrote to Student J.W. about potential coursework at Livonia, "[i]t looks like you may be 50% eligible based on a verbal from the VA so we would need to scholarship the difference."

64.    When NHLS submitted the enrollment certification through VA-ONCE for Student J.W., NHLS did not deduct the "scholarship" from the amount of tuition and fees.   Rather, NHLS sought the total cost of the course and received payment from the VA based on that misrepresentation.

65.    Similarly, on February 9, 2017, an NHLS employee wrote to someone on behalf of Student B.H. about coursework in Livonia, that "Career Services needs him to fill out this grant form.   It is because he is 70% eligible for benefits through the VA so we are discounting the program by 30%.   For the questions asked just fill out to best of ability and please do not leave any questions blank."

66.    The first question on the grant form that Student B.H. completed was

20

"What is your primary purpose for pursuing a tuition grant from New Horizons?"
Student B.H. replied, "Post 9/11 GI Bill."

67.    When NHLS submitted the enrollment certification through VA-
ONCE for Student B.H., NHLS did not deduct the "grant" from the amount of
tuition and fees.   Rather, NHLS sought the total cost of the course and received
payment from the VA based on that misrepresentation.

68.    Similarly, prior to enrolling Student M.J., a 70 percent funded veteran,
in NHLS Chicago's Business Management Analyst/Business Administration
Professional courses, NHLS employees discussed Student M.J.'s funding and the
need to discount his tuition.   On November 21, 2016, NHLS employee Julie
Schrebe, in Grand Rapids, wrote, "I will need your approval to move forward with
this order.   The student is eligible for 70% of his Chapter 33 entitlement. The
program total is $17,500 … at 70%, NH should receive $12,250."   She went on to
ask another NHLS copied on the email to submit the "NH Grant Application for
this student" after obtaining approval.

69.    Student M.J. also applied for the New Horizons Computer Learning
Center Career Education Program Grant.   Under its terms, receipt of the Grant
obligated Student M.J. to do no more than attend class, complete assignments, and
pursue unspecified professional certifications consistent with the coursework.
Asked for the primary purpose in pursuing "a tuition grant from New Horizons,"
Student M.J. responded "Montgomery G.I. Bill is funded less than 100%."

70.    NHLS approved the grant, awarded it to Student M.J., but failed to deduct it from the amount certified to VA even though the grant was designated for the sole purpose of reducing Student M.J.'s tuition.

71.    For some veterans, NHLS simply waived the balance between the total cost of the program and the amount VA would pay on a less than fully funded veteran's behalf.   For example, NHLS enrolled Student K.E., a 40 percent funded veteran, in its Information Technology Specialist 8 program at NHLS's Livonia location in or around May 2015.

72.    Student K.E. ultimately enrolled in seven of the eight courses in this program, which had a total cost of $20,000.   Because he was funded at 40 percent, NHLS would receive only $8,000 from the VA for the entire program.   Prior to certifying the first course to the VA, NHLS voided the remaining debt of $12,000 owed by Student K.E.   On its Accounts Receivable Void form, the reason given for the void was "40% Eligible w/VA."   NHLS later submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for seven of the eight courses, for a total of $17,500, and was paid by VA based on that amount.

73.    For nearly every Post-9/11 GI Bill veteran who was less than fully funded, NHLS failed to deduct the tuition scholarships, grants, or discounts it offered and provided to veterans from what NHLS certified to the VA.

74.    Across the five locations described in Paragraphs 38 through 42

22

above, NHLS enrolled at least 273 Post-9/11 GI Bill funded veterans who received less than full funding. For at least 269 of those 273 less than fully funded veteran students, NHLS certified the total cost of their tuition and fees without deducting the tuition scholarships, grants, or discounts that it offered and provided to veteran students and applied to their accounts.

75. By inflating the amounts that it reported to VA for those veterans, NHLS increased the amounts VA remitted to NHLS for Post-9/11 GI Bill veterans' educational assistance benefits.

76. Defendant's electronic claims for payment for these veterans and the corresponding certifications of compliance from VA Form 22-199 incorporated by reference were therefore false and should not have been paid.

77. The following are additional, specific examples of false claims and certifications at the NHLS locations relevant to this Amended Complaint.

**a. Chicago – Student A.H.**

78. Student A.H. enrolled in NHLS's Network Systems Administrator Program in Chicago in or around December 2016.

79. Due to his military service, Student A.H. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit. NHLS knew that Student A.H. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding.

80. NHLS employees internally discussed Student A.H.'s application to

enroll and his funding.   On December 7, 2016, NHLS employee Julie Schrebe requested that NHLS discount the program cost for Student A.H. based on his funding level.   She wrote to NHLS employees Amanda Bowman and NHLS VP of Sales Gary Abernathy, "[i]t has now been confirmed he is only 60% eligible and, therefore, the $20,500 program total will now equate for $12,300 for NH. I will need your approval of the 60% eligibility before I move forward."   Her request was approved.

81.     NHLS's internal ledger reflects that Student A.H. was 60 percent eligible and that NHLS awarded Student A.H. tuition grants totaling $8,200.00. That is the difference between the total cost of the course ($20,500) and Student A.H.'s Post-9/11 GI Bill benefit of 60 percent ($12,300).

82.     Yet NHLS did not first deduct the amount of the tuition grants from the amounts that it certified to the VA for Student A.H.   Rather, on the electronic enrollment certifications for Student A.H., NHLS certified the total cost of each course in the Network Systems Administrator Program as reflected in NHLS's ledger for Student A.H., even though the ledger also showed deductions for the tuition grants.

83.     NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses on the following dates:

- December 14, 2016 ($7,120.00);

24

- February 8, 2017 ($5,575.00);

- April 19, 2017 ($1,115.00); and

- May 23, 2017 ($6,690.00).

84.     The Certifying Official was NHLS employee Julie Schrebe, who

worked in Grand Rapids, Michigan.

85.     The VA paid NHLS $12,300, or 60 percent of each of these amounts,

as reflected in the ledger.

86.     At no time did NHLS reveal to the VA that it had provided Student

A.H. with grants for the difference between the total cost of its courses and the

amount VA would pay.

87.      As a result, the VA paid NHLS more for Student A.H.'s tuition and

fees than it would have had NHLS complied with the Last Payer Rule and properly

deducted the amount of the tuition "grants" from the amount of tuition and fees it

certified in VA-ONCE.

### b.     Grand Rapids – Student J.B.

88.     Beginning in approximately March 2015, Student J.B. enrolled in

NHLS's Information Technology Specialist 8 courses at NHLS's Grand Rapids

location.

89.     Due to his military service, Student J.B. was eligible to receive Post-

9/11 GI Bill educational assistance from the VA up to 70 percent of the maximum

allowed benefit.   NHLS knew that Student J.B. was eligible for Post-9/11 GI Bill

25

benefits and knew the amount of his funding.

90.     NHLS's own records reflect that Student J.B. enrolled in at least six courses as part of this program with a total cost of $20,000 and was 70 percent eligible.

91.     On the electronic enrollment certifications for Student J.B., NHLS certified the total cost of each course in the Information Technology Specialist 8 program, as reflected in NHLS's ledger and VA-ONCE enrollment certifications.

92.     NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses on the following dates:

- March 3, 2015 ($2,500.00);

- April 7, 2015 ($7,500.00);

- August 18, 2015 ($2,500.00);

- March 7, 2016 ($2,500.00);

- September 12, 2016 ($2,500.00);

- September 27, 2016 ($2,500.00); and

- October 6, 2016 (change in student status);

93.     The Certifying Officials were NHLS employee Fay Bazzy, who worked in Detroit, NHLS employee Ashley Peterson, and NHLS employee Sue Ann Law.

94.     The VA paid NHLS $14,000, or 70 percent of the full cost of tuition

26

for the Information Technology Specialist 8 program.

95.     NHLS's ledger reflects that it voided the $6,000.00 balance owed by the student noting, "Void (Student only 70% eligible, did not pay 30%)."   NHLS did not seek payment of the remaining 30 percent tuition cost from Student J.B.

96.     NHLS had no intention of recouping any of the money owed by the veteran.

97.     At no time did NHLS reveal to the VA that it had reduced Student J.B.'s tuition by relieving him of his obligation to pay the difference between the total cost of its courses and the amount VA would pay.

98.     As a result, the VA paid NHLS more for Student J.B.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of tuition waiver from the amount of tuition and fees it certified in VA-ONCE.

### c.     Livonia – Student S.M.

99.     Beginning in approximately June 2015, Student S.M. enrolled in NHLS's Business Operations Professional program at NHLS's Livonia location.

100.    Due to her military service, Student S.M. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 50 percent of the maximum allowed benefit.   NHLS knew that Student S.M. was eligible for Post-9/11 GI Bill benefits and knew the amount of her funding, as reflected in its own records.

101.    Student S.M. ultimately enrolled in at least three courses in this

program, with a total cost of $7,500.

102.   NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses on the following dates:

- June 4, 2015 ($2,500.00);

- July 7, 2015 ($2,500.00); and

- August 11, 2015 ($2,500.00).

103.   The Certifying Official was NHLS employee Laura Smith.

104.   The VA paid NHLS $3,750.00 for Student S.M.'s tuition and fees for these courses.

105.   NHLS's ledger reflects that it awarded Student S.M. a grant for $3,750.00, which is the difference between the total cost of the program and the amount of Student S.M.'s funding from the VA.

106.   At no time did NHLS reveal to the VA that it reduced the amount of Student S.M.'s tuition by awarding her a "grant" for the difference between the total cost of its courses and the amount VA would pay.

107.   As a result, the VA paid NHLS more for Student S.M.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of the tuition "grant" from the tuition and fees it certified in VA-ONCE.

### d.   Troy – Student B.K.

108.   Beginning in approximately March 2017, Student B.K. enrolled in NHLS's Security IT Associate course at NHLS's Troy location.

109.   Due to his military service, Student B.K. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit.   NHLS knew that Student B.K. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding as shown in its internal ledger.

110.   NHLS awarded Student B.K. the Career Education Program Grant sometime shortly after March 9, 2017.

111.   NHLS's records reflect that Student B.K. enrolled in the Security IT Associate course and received a grant of $3,000, which is the difference between the total cost of the course ($7,500) and Student B.K.'s Post-9/11 GI Bill benefit of 60 percent ($4,500).

112.   NHLS did not deduct the amount of that grant from the tuition amount that it certified to the VA even though the grant was designated for the sole purpose of reducing Student B.K.'s tuition.   Rather, NHLS certified the total cost of the course without deduction.

113.   NHLS submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for this course on March 22, 2017, for the total cost of the course ($7,500).   The Certifying Official was NHLS employee Julie Schrebe.

114.    VA paid NHLS 60 percent of that amount, $4,500.

115.    Beginning in December 2017, Student B.K. also enrolled in NHLS's

Network Systems Administrator Program at its Troy location, which is also

reflected in NHLS's internal ledger.

116.    Prior to that, NHLS internally discussed Student B.K.'s application

for this program and his eligibility for VA benefits.   On October 2, 2017, Julie

Schrebe, a Student Affairs Manager and Certifying Official, sent an email to a

Career Consultant and NHLS's Vice President of Admissions, Steve Appleby,

writing, "[Student B.K.] is only 60% eligible for benefits, so Steve will have to

approve a 40% discount on program costs.   I'll also need a Grant Application and

a 22-1995 application completed along with the SLP and Enrollment Agreement."

Steve replied asking for the "retail and discount amount of the program," to which

the Career Consultant replied "$16,211.25 after discount it would be $9726.75."

Steve Appleby approved the discount immediately thereafter.

117.    These same figures are reflected in NHLS's internal ledger.   That

ledger shows that Student B.K. enrolled in the NSAP program with a total of four

courses and received a grant of $6,484.50, which is the difference between the total

cost of the course ($16,211.25) and Student B.K.'s Post-9/11 GI Bill benefit of 60

percent ($9,726.75).

118.    Again, NHLS did not first deduct the amount of the grant from the

amounts it certified to the VA, even though the grant was designated for the sole

purpose of reducing Student B.K.'s tuition.   Instead, NHLS certified the total cost of the courses.

119.   NHLS submitted, or caused to be submitted, electronic enrollment certifications to the VA requesting payment of federal funds for these courses as follows:

- December 6, 2017 ($6,518.75) amended March 1, 2018;

- March 1, 2018 ($2,058.75);

- March 6, 2018 (adjustment change in student status); and

- March 6, 2018 ($7,633.75).

120.   The Certifying Official was NHLS employee Amanda Droba in Chicago.

121.   At no time did NHLS reveal to the VA that it had awarded grants to Student B.K. to cover the difference between the total cost of the two courses and Student B.K.'s eligibility for benefits.

122.   As a result, the VA paid NHLS more for Student B.K.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amounts of the "grants" from the tuition and fees it certified in VA-ONCE.

### e.   Garfield Heights – Student N.R.

123.   Beginning in approximately July 2016, Student N.R. enrolled in NHLS's Information Technology Specialist 8 courses at NHLS's Garfield Heights

location.

124.   Due to his military service, Student N.R. was eligible to receive Post-9/11 GI Bill educational assistance from the VA up to 60 percent of the maximum allowed benefit.   NHLS knew that Student N.R. was eligible for Post-9/11 GI Bill benefits and knew the amount of his funding as shown in its internal ledger.

125.   NHLS's records reflect that Student N.R. enrolled in four courses as part of this program and received a grant of $8,000, which is the difference between the total cost of the course ($20,000) and Student N.R.'s Post-9/11 GI Bill benefit of 60 percent ($12,000).   There is no record of Student N.R. applying for a grant in his enrollment application or NHLS student file.

126.   NHLS did not first deduct the amount of the grant from the tuition amounts that it certified to the VA, even though the grant was designated for the sole purpose of reducing Student N.R.'s tuition.   Rather, NHLS certified the total cost of the courses without deduction.

127.   NHLS submitted, or caused to be submitted, the electronic enrollment certifications to the VA requesting payment of federal funds for these courses on July 27, 2016, for the total program cost of $20,000.

128.   VA paid NHLS 60 percent of that amount, $12,000.

129.   The Certifying Official was NHLS employee Christine Williams.

130.   NHLS did not seek payment from Student N.R. for any amounts in excess of his Post-9/11 GI Bill benefit, and Student N.R. paid nothing out of

pocket for these courses.

131. At no time did NHLS reveal to the VA that it had provided Student N.R. with a grant for the difference between the total cost of its courses and the amount VA would pay.

132. As a result, the VA paid NHLS more for Student N.R.'s tuition and fees than it would have had NHLS complied with the Last Payer Rule and properly deducted the amount of the "grant" from the tuition and fees it certified in VA-ONCE.

133. Like these specific examples, NHLS submitted false claims for at least 269 Post 9/11 GI Bill funded veterans during the course of this scheme. As a result, VA remitted payment to NHLS for Post-9/11 GI Bill educational assistance benefits to which it was not entitled.[1]

### D.    Defendant's false claims and false statements were material to VA's decision to pay the claims

134. Materiality means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

135. The VA would not have paid Post-9/11 GI Bill tuition and fees to NHLS had it known that NHLS (1) falsely inflated the amount of tuition and fees it claimed on the electronic enrollment certifications and (2) falsely claimed compliance with its obligation to exercise reasonable diligence in complying with

---

1 The United States will serve Defendant with this list of veterans.

Title 38, including the Last Payer Rule.

136.   The VA, or the SAAs on VA's behalf, performs on-site compliance surveys at schools across the country.   The purpose of these surveys is to ensure that payments made by the VA were based on correct enrollment information furnished by the school and to ensure that schools understand and follow the requirements of the law.   In these surveys, representatives from the VA review small samples of randomly selected student files for veterans who were fully funded and less than fully funded under the Post-9/11 GI Bill.   After the on-site review, the VA provides its findings in writing to the school with any identified discrepancies from the survey.

137.   The VA performed such surveys at NHLS schools between January 2013 and August 2019 and identified violations of the Last Payer Rule.   Where it identified deficiencies, the VA directed NHLS, or the NHLS schools, to remit to the VA any overpayment.   By doing so, NHLS knew that its practice of inflating the certified tuition and fees was wrong and that the VA would not pay Post-9/11 GI Bill benefits to NHLS where the school failed to deduct tuition scholarships, grants, or discounts from the amount certified in VA-ONCE, in violation of the Last Payer Rule.

138.   For example, on or about May 7, 2017, the VA notified NHLS's Chicago location that it had completed a compliance survey and identified violations in multiple student files where NHLS had failed to report accurate

34

tuition and fees to the VA.   In each instance, the VA noted that NHLS failed to deduct the amount of a tuition grant awarded to the student from the tuition costs certified and submitted to the VA.   For each student, the VA noted in the survey findings that it processed a school debt with the amount of the overpayment.

139.   One student included in the May 7, 2017, compliance survey was Student M.J., from Paragraph 68 above.   The VA noted in its survey findings that NHLS failed to deduct the amount of tuition grants awarded to Student M.J. prior to certifying tuition and fees to the VA and that the VA had processed a school debt for $3,675.00.

140.   Similarly, the VA notified NHLS's Livonia location on July 31, 2018, that it had recently completed a compliance survey and identified violations in multiple student files where NHLS had failed to report accurate tuition and fees to the VA.   In each instance, the VA noted that NHLS failed to deduct the amount of a tuition grant awarded to the student from the tuition and fees certified and submitted to the VA.

141.   For example, one student included in the July 31, 2018, compliance survey was Student B.H., from Paragraph 65 above.   The VA noted that NHLS failed to deduct the amount of a grant awarded to Student B.H. from the amount of tuition and fees certified in VA-ONCE for a term between March and May of 2017.   The VA created a school debt for NHLS in the amount of the overpayment.

## COUNT I: FALSE OR FRAUDULENT CLAIMS

## VIOLATION OF THE FALSE CLAIMS ACT
### (31 U.S.C. § 3729(a)(1)(A))

142.   The United States incorporates by reference the allegations contained in Paragraphs 1 through 141.

143.   From at least January 2013 through August 2019, Defendant NHLS knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval.   More specifically, Defendant submitted electronic enrollment certifications through VA-ONCE in which Defendant (1) falsely inflated the amount of tuition and fees it claimed for Post-9/11 GI Bill veterans; and (2) falsely certified that it had exercised reasonable diligence in meeting Title 38's requirements, when it had not done so.

144.   The United States suffered damages as a result of Defendant's false or fraudulent claims.

145.   Defendant is liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendant.

## COUNT II: FALSE STATEMENTS

## VIOLATION OF THE FALSE CLAIMS ACT

36

(31 U.S.C. § 3729(a)(1)(B))

146.   The United States incorporates by reference the allegations contained in Paragraphs 1 through 141.

147.   From at least January 2013 through August 2019, Defendant knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.   More specifically, Defendant submitted electronic enrollment certifications through VA-ONCE in which Defendant (1) falsely inflated the amount of tuition and fees it claimed for Post-9/11 GI Bill veterans; and (2) falsely certified that it had exercised reasonable diligence in meeting Title 38's requirements, when it had not done so.

148.   The United States suffered damages as a result of Defendant's false records or statements.

149.   Defendant is liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 (as revised by 28 C.F.R. Part 85) for each false claim presented or caused to presented by Defendant.

## <u>COUNT III: PAYMENT UNDER MISTAKE OF FACT</u>

150.   The United States incorporates by reference the allegations contained in Paragraphs 1 through 141.

151.   As a consequence of the acts described above, the United States paid money to Defendant NHLS from at least January 2013 through August 2019, based

37

on a mistaken belief that NHLS had complied with federal rules and regulations governing Post-9/11 GI Bill benefits.   The United States paid more money to Defendant than it would have had the United States known that Defendant was not in compliance with the Last Payer Rule.

152.   The United States suffered damages as a result of payments to Defendant under mistake of fact, and Defendant is liable to make restitution to the United States for an amount to be determined at trial.

## COUNT IV: UNJUST ENRICHMENT

153.   The United States incorporates by reference the allegations contained in Paragraphs 1 through 141.

154.   From at least January 2013 through August 2019, the United States paid Post-9/11 GI Bill educational assistance benefits to Defendant NHLS in amounts exceeding what Defendant knew or should have known it was actually entitled to receive.

155.   Defendant retained or used monies from the United States for Post-9/11 GI Bill educational assistance benefits to which Defendant was not entitled and was therefore unjustly enriched.

156.   By directly or indirectly obtaining federal funds from VA to which it was not entitled, Defendant was unjustly enriched at the expense of the United States and is liable to account and pay to the United States an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court declare a judgment in favor of the United States and against Defendant as follows:

a.       On Counts I and II, against Defendant for the amount of the United States' damages, trebled as required by law, and such costs and civil penalties as required by law, together with such further relief as may be just and proper.

b.       On Count III for payment under mistake of fact, against Defendant for an amount equal to the money paid by the United States to Defendant, or on Defendant's behalf, to which Defendant was not entitled, plus interest, costs, and expenses.

c.        On Count IV for unjust enrichment, against Defendant for the damages sustained and/or amounts by which Defendant retained monies received or benefitted from reimbursements paid by the United States to which Defendant was not entitled, plus interest, costs, and expenses.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DAWN N. ISON
United States Attorney

JOHN SPACCAROTELLA
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226

39

(313) 226-0215
John.spaccarotella@usdoj.gov

JAMIE ANN YAVELBERG
ALLISON CENDALI
CHRISTOPHER G. WILSON
Attorneys, Civil Division
P.O. Box 261
Washington, D.C. 20044
(614) 255-1630
Christopher.G.Wilson@usdoj.gov

Counsel for the United States of America

Dated:   May 24, 2023

## CERTIFICATE OF SERVICE

I certify that on May 24, 2023, I filed the foregoing document via the

Court's CM/ECF system and that I caused the foregoing document to be served

through the CM/ECF system upon all counsel of record.

*/s John Spaccarotella*
John Spaccarotella
Assistant United States Attorney
Counsel for the United States of America