UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>NH LEARNING SOLUTIONS<br>CORPORATION,<br><br>　　　　　　Defendant. | Case No. 2:22-cv-13045-LJM-CI<br><br>Hon. Laurie J. Michelson, Judge<br><br>Hon. Curtis Ivy, Jr., Mag. Judge |

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant NH Learning Solutions Corporation ("NHLS") respectfully moves this Court to dismiss the Amended Complaint (the "FAC") filed by the United States (ECF No. 10) with prejudice, for failing to state a claim upon which relief can be granted (the "Motion"), and states as follows:

1. NHLS was, for well over twenty years, a leading Michigan-based provider of instructor-led training "in the use of business applications, business skills, information technology (IT), leadership and management and business process optimization." (FAC ¶ 16, ECF No. 10, PageID.106). NHLS provided predominantly corporate training services and successfully trained tens of thousands of corporate employees in Michigan and the Midwest. As part of its business, NHLS also provided career training to a mixture of students, including, as relevant here,

veterans that used their Post-9/11 GI Bill benefits to fund their education through the U.S. Department of Veterans Affairs (the "VA").

2.   The Government brought this action against NHLS under the False Claims Act and federal common-law, alleging that NHLS overcharged the VA for tuition and fees for educational services NHLS provided to certain veterans under the Post-9/11 GI Bill between January 2013 and August 2019. The specific veterans at issue were entitled to *partial* funding based on their length of service. The Government does not claim that NHLS charged a higher price to veterans for the same program than other students. Rather, the Government alleges that NHLS did not charge the veteran for the *remainder* of the tuition and fees (i.e., the portion not paid for by the VA). The Government claims that this alleged conduct led to the Government being wrongly overcharged. It rests this curious claim on the so-called Last Payer Rule, 38 U.S.C. § 3313, which, the Government argues, required NHLS to treat the tuition and fees it allegedly failed to charge partially-funded veteran students as a "grant" to the veterans that would have reduced the total tuition claim submitted by NHLS to the VA and, ultimately, the amount the VA would have paid NHLS.

3. NHLS moved to dismiss the original Complaint on two grounds—first, that the Government failed to plausibly allege a violation of the Last Payer Rule, 38 U.S.C. § 3313; and second, that most of the NHLS-submitted claims at issue in this lawsuit are time-barred. In an attempt to plead around these deficiencies, the

Government filed its FAC to add certain allegations and to change the substantive and limitations statutes it relies upon. But the FAC does not cure the fundamental underlying problems with the Government's case. NHLS therefore now moves to dismiss the FAC for failure to state a claim on those two essential grounds.

4.  First, the Government's case is premised on a misapplication of 38 U.S.C. § 3313. The statute contains a series of formulas that determine the amount of educational assistance available for different types of institutions and educational programs. The Government wrongly claimed in its Complaint that § 3313(c) applied, even though that provision only applies to "institutions of higher learning," which NHLS is not. In its FAC, the Government has switched statutory provisions and now relies on § 3313(g). (FAC at ¶ 27 & 57, PageID.110, 118).

5. Although § 3313(g) applies to NHLS, it does not support the Government's case. The applicable subsection of § 3313(g) limits the amount of educational assistance to the lesser of the (I) "actual net cost for in-State tuition and fees," after deducting tuition waivers, grants, and scholarships, or (II) $17,500 (plus annual inflation adjustments). 38 U.S.C. § 3313(g)(3)(A)(i) (emphasis added). The Government's theory is that, to the extent NHLS allegedly did not charge a partially-funded veteran (a veteran with reduced eligibility based on length of service) the veteran's share of tuition for a covered program, that forgone tuition constitutes a "grant" that is deducted from the allowable "actual net cost for in-State tuition and

3

fees" in the § 3313(g)(3)(A)(i) formula. The flaw in the Government's theory is that "in-State tuition" is only charged by *public* institutions, not private schools like NHLS, so § 3313(g)(3)(A)(i)(I) does not apply as a matter of law.  And there is no netting of grants under § 3313(g)(3)(A)(i)(II)—that is, only the flat-fee $17,500 cap (plus adjustment for inflation) applies.  Because the Government has not alleged that NHLS exceeded the cap, the Government's allegation that NHLS violated the Last Payer Rule fails as a matter of law.

6. Second, the bulk of the NHLS-submitted claims at issue in the FAC are time-barred from enforcement. Giving effect to the parties' tolling agreements, Government enforcement based on claims NHLS submitted for payment prior to June 18, 2015, is untimely under the six-year statutes of limitation set forth in 31 U.S.C. § 3731(b)(1) and 28 U.S.C. § 2415(a). When NHLS's motion to dismiss raised this issue, the Government again changed the statutes relied upon in its FAC and now seeks to invoke a three-year discovery rule, 31 U.S.C. § 3731(b)(2), and a separate tolling provision for the common law claims, 28 U.S.C. § 2416(c), to reach claims dating back to January 2013. But the Government's pivot fails because the allegations of the FAC establish that the Government knew, or should have known, of the alleged violations as early as January 2013 and no later than May 2017, well before the tolling agreements were signed, rendering claims arising before June 18, 2015, time-barred. At a minimum, these claims must be dismissed.

7. Consistent with Local Rule 7.1(a), counsel for NHLS contacted counsel for the United States on June 13, 2023, to ask whether counsel would concur in the relief sought. Counsel for the United States stated that the United States does not concur.

8. Therefore, for the reasons stated in this Motion and the following Brief in Support, which is incorporated herein by this reference, NHLS respectfully requests that the Court grant this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss the FAC with prejudice at the Government's cost, and to award to NHLS such other and further relief to which it is entitled.

Respectfully submitted,

*/s/ Patrick T. Lewis*
Gregory S. Pierce (P45552)
GS Pierce, PC
4233 Cherry Hill Drive
Orchard Lake, MI  48323
Phone: 734-853-2043
Email: gspierce1965@gmail.com

Erika Dackin Prouty (Ohio 0095821)          Patrick T. Lewis (Ohio 0078314)
BakerHostetler LLP                          BakerHostetler LLP
200 Civic Centre Drive, Suite 1200          127 Public Square, Suite 2000
Columbus, Ohio 43215                        Cleveland, Ohio 44114
Phone: 614-228-1541                         Phone: 216-621-0200
Email: eprouty@bakerlaw.com                 Email: plewis@bakerlaw.com

*Counsel for Defendant,*
*NH Learning Solutions Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.

NH LEARNING SOLUTIONS
CORPORATION,

                    Defendant.

Case No. 2:22-cv-13045-LJM-CI

Hon. Laurie J. Michelson, Judge

Hon. Curtis Ivy, Jr., Mag. Judge

## **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Gregory S. Pierce (P45552)
GS Pierce, PC
4233 Cherry Hill Drive
Orchard Lake, MI  48323
Phone: 734-853-2043
Email: gspierce1965@gmail.com

Erika Dackin Prouty (Ohio 0095821)
BakerHostetler LLP
200 Civic Centre Drive, Suite 1200
Columbus, Ohio 43215
Phone: 614-228-1541
Email: eprouty@bakerlaw.com

Patrick T. Lewis (Ohio 0078314)
BakerHostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone: 216-621-0200
Email: plewis@bakerlaw.com

*Counsel for Defendant,*
*NH Learning Solutions Corporation*

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.  The Government's Amended Complaint (ECF No. 10, the "FAC") asserts four claims under the False Claims Act and federal common-law. All these claims hinge on the idea that NHLS's alleged conduct in not charging veterans who were partially funded under the Post-9/11 GI Bill for their "share" of tuition and fees violates the Last Payer Rule, 38 U.S.C. § 3313. The Government's theory is that the amount of tuition NHLS forwent by allegedly not charging partially-funded veterans for their "share" should have been treated as a "grant" to the veteran that lowered the total tuition claim submitted by NHLS to the VA and, ultimately, the amount the VA would have paid NHLS. But the Last Payer Rule provision the Government relies on, 38 U.S.C. § 3313(g), only requires netting of "grants" for institutions that charge "in-State tuition"—which NHLS does <u>not</u> charge as it is a private institution. Does the FAC therefore fail to state a claim upon which relief can be granted?

2.  The time period covered by the FAC runs from January 2013 to August 2019. Are claims presented to the Government for payment prior to June 18, 2015 barred by the statutes of limitation in 31. U.S.C. § 3731(b) and 28 U.S.C. § 2415(a), when the FAC affirmatively establishes that the Government knew or reasonably should have known of material facts giving rise to the cause of action as early as January 2013 and no later than May 2017, well before the tolling agreements were signed?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**Cases**

*Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008)

*Russello v. United States*, 464 U.S. 16 (1983)

*United States v. Detroit Medical Center*, 833 F.3d 671 (6th Cir. 2016)

**Statutes**

28 U.S.C. § 2415

28 U.S.C. § 2416

31 U.S.C. § 3731

38 U.S.C. § 3313

**Other**

Fed. R. Civ. P. 12(b)(6)

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iii

TABLE OF AUTHORITIES ................................................................vi

I.    INTRODUCTION ....................................................................1

II.   THE GOVERNMENT'S ALLEGATIONS ...................................2

III.  LEGAL STANDARD ...............................................................4

IV.   ARGUMENT..........................................................................5

      A.   The Government Has Not Alleged A Plausible Violation of
           § 3313(g)(3)(A). ........................................................5

           1.   The plain text of § 3313(g) does not support liability here. .......6

           2.   Congress did not intend for § 3313(g) to apply to NHLS as
                the Government now claims. ....................................8

           3.   The VA cannot rewrite § 3313(g) to apply to this case.............12

           4.   Even if VA claims its interpretation is entitled to deference,
                the FAC must still be dismissed under the fair-notice
                doctrine................................................................14

      B.   At a Minimum, The Government's FCA Claims Arising From
           Claims Submitted Prior To June 18, 2015, Are Time-Barred. ..........16

           1.   The facts as alleged establish that pre-June 18, 2015, claims
                are time-barred under § 3731(b)(2). ..........................17

           2.   VA officials are the "official of the United States charged
                with responsibility to act in the circumstances." ......................18

           3.   DOJ officials knew or reasonably should have known of
                NHLS's alleged violations.......................................20

      C.   The Government's Common Law Claims Are Time-Barred. ............24

V.    CONCLUSION.................................................................................25

CERTIFICATE OF SERVICE .................................................................26

BRIEF CERTIFICATION FORM............................................................27

<u>EXHIBITS</u>

U.S. Department of Veterans Affairs, School Certifying Official Handbook, Rev. 6.7 (Apr. 5, 2023) (excerpts) ............................................................A

U.S. Department of Veterans Affairs Ltr. to New Horizons Computer Learning Center (Chicago), March 17, 2017 ..........................................................B

U.S. Department of Veterans Affairs Compliance Survey, May 7, 2017 (redacted format) ...............................................................C

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agema v. City of Allegan*,
    826 F.3d 326 (6th Cir. 2016) ................................................................................4

*Arangure v. Whitaker*,
    911 F.3d 333 (6th Cir. 2018) ................................................................................6

*Bailey v. United States*,
    516 U.S. 137 (1995) ...................................................................................10, 11

*Bassett v. Nat'l Collegiate Athletics Ass'n*,
    528 F.3d 426 (6th Cir. 2008) ..............................................................................13

*Bishop v. Lucent Technologies, Inc.*,
    520 F.3d 516 (6th Cir. 2008) ................................................................................5

*Board of Governors of Fed. Reserve Sys. v. Dimension Financial Corp.*,
    474 U.S. 361 (1986) ............................................................................................13

*Christopher v. SmithKline Beecham Corp. dba GlaxoSmithKline*
    567 U.S. 142 (2012) ............................................................................................15

*Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n*,
    528 F.2d 645 (5th Cir. 1976) ..............................................................................15

*Dykema Excavators, Inc. v. Blue Cross & Blue Shield Of Michigan*,
    77 F. Supp. 3d 646 (E.D. Mich. 2015) ..................................................................4

*Fazekas v. Cleveland Clinic Found. Health Care Ventures*,
    204 F.3d 673 (6th Cir. 2000) ..............................................................................13

*Florian v. United States*,
    2019 WL 2284938 (E.D. Mich. May 29, 2019) ....................................................4

*U.S. ex rel. Frascella v. Oracle Corp.*,
    751 F. Supp. 2d 842 (E.D. Va. 2010) ...........................................................*passim*

*Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*,
    563 F.3d 1205 (11th Cir. 2009) ...........................................................19

*Hamden v. Rumsfeld*,
    548 U.S. 557 (2006)............................................................................12

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)..............................................................................6

*Jones v. Bock*,
    549 U.S. 199 (2007)..............................................................................5

*Keene Corp. v. United States*,
    508 U.S. 200 (1993)........................................................................9, 12

*Kingdomware Techs, Inc. v. United States*,
    579 U.S. 162 (2016)..............................................................................6

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
    777 F. Supp. 195 (N.D.N.Y. 1991)....................................................18

*LW Constr. of Charleston, LLC v. United States*,
    139 Fed. Cl. 254 (Fed. Cl. 2018) .......................................................19

*Myers v. Copper Cellar Corp.*,
    192 F.3d 546 (6th Cir. 1999) .............................................................13

*Russello v. United States*,
    464 U.S. 16 (1983)................................................................................9

*United States v. Altivia Petrochemicals, LLC*,
    2022 WL 458463 (S.D. Ohio Feb. 15, 2022) ....................................15

*United States v. Beck*,
    758 F.2d 1553 (11th Cir. 1985) ....................................................24, 25

*United States v. Boeing Co., Inc.*,
    845 F.2d 476 (4th Cir. 1988) .............................................................24

*United States v. Bollinger Shipyards, Inc.*,
    2013 WL 393037 (E.D. La. Jan. 30, 2013) ...................................24, 25

*United States v. Cripps*,
   451 F. Supp. 598 (E.D. Mich. 1978) ................................................................16

*United States v. Detroit Medical Center*,
   833 F.3d 671 (6th Cir. 2016) ........................................................................11

*United States v. Ekelman & Assocs., Inc.*,
   532 F.2d 545 (6th Cir. 1976) .......................................................................16

*United States v. Inc. Vill. of Island Park*,
   791 F. Supp. 354 (E.D.N.Y. 1992) ...........................................................20, 22

*United States v. Intrados/Int'l Mgmt. Grp.*,
   265 F. Supp. 2d 1 (D.D.C. 2002).............................................................21, 25

*United States v. Quicken Loans Inc.*,
   239 F. Supp. 3d 1014 (E.D. Mich. 2017) ............................................................5

*United States v. Szilvagyi*,
   2005 WL 8178311 (E.D. Mich. Jan. 14, 2005) .................................................19

*Utility Air Regulatory Grp. v. E.P.A.*,
   573 U.S. 302 (2014).....................................................................................12

*U.S. ex rel. Wilkins v. N. Am. Const. Corp.*,
   2001 WL 34109383 (S.D. Tex. Sept. 26, 2001)................................................24

**Statutes**

28 U.S.C. § 2415 ...........................................................................................2, 24

28 U.S.C. § 2416.......................................................................................2, 24, 25

31 U.S.C. § 3731 ......................................................................................*passim*

38 U.S.C. § 3313 ......................................................................................*passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................4, 5

**Other Authorities**

132 Cong. Rec. 20,536 (1986) ..............................................................................20

U.S. Dep't of Veterans Affairs Functional Org. Manual v4.0 (2017).....................23

## I.   __INTRODUCTION__

The Government's Amended Complaint (ECF No. 10, the "FAC") against NH Learning Solutions Corporation ("NHLS") asserts claims under the False Claims Act and common law, alleging that between January 2013 and August 2019, NHLS allegedly overbilled the U.S. Department of Veteran Affairs ("VA") for educational programs provided to 269 military veterans who were partially funded under the Post-9/11 GI Bill. NHLS now moves to dismiss on two alternative grounds.

First, the Government's case rests on an erroneous read of the "Last Payer Rule" at issue in this case. That statute, 38 U.S.C. § 3313, contains a series of formulas that determine the amount of educational assistance available for different types of institutions and educational programs. The Government alleges that NHLS failed to charge certain partially-funded veterans for their share of tuition, and that the statute required NHLS to treat that forgone tuition as a "grant" to the veteran that reduced the program cost certified to the VA. Because NHLS allegedly failed to apply that reduction in some cases, the Government contends it overpaid NHLS— and NHLS therefore violated the FCA.

But the statute does not apply to NHLS in the way the Government alleges. In the original Complaint, the Government cited a subsection of the Last Payer Rule, 38 U.S.C. § 3313(c), that only applied to "institutions of higher learning," which NHLS is not. In the FAC, the Government pivots to a different subsection,

§ 3313(g)(3)(A)(i), which applies to institutions other than institutions of higher learning. That section limits the amount of educational assistance to the lesser of the (I) "actual net cost for in-State tuition and fees," after deducting tuition waivers, grants, and scholarships, or (II) $17,500 (adjusted for inflation) (emphasis added). The first provision, § 3313(g)(3)(A)(i)(I), does not control because "in-State tuition" is only charged by *public* institutions, not private schools like NHLS. It necessarily follows that only second provision, § 3313(g)(3)(A)(i)(II), applies. But that provision is simply a fixed-dollar cap; it does not require the netting of "grants" that the Government's case hinges on. There are no allegations that NHLS exceeded the cap. Accordingly, the Government's claims fail as a matter of law.

Second, at a minimum, all claims at issue in this case predating June 18, 2015, are barred by the six-year statutes of limitations in 31 U.S.C. § 3731(b)(1) and 28 U.S.C. § 2415(a), as extended by tolling agreements. In its FAC, the Government now tries to save these claims by alleging the discovery rule of 31 U.S.C. § 3731(b)(2) and the tolling provision of 28 U.S.C. § 2416(c) apply. This effort fails as a matter of law because the FAC's allegations show the Government knew or reasonably should have known of the alleged conduct well before the limitations periods were tolled. All pre-June 18, 2015, claims must be dismissed.

## II.   THE GOVERNMENT'S ALLEGATIONS

NHLS, formed in 1995, operated training centers that provided "instructor-

2

led training . . . in the use of business applications, business skills, information technology (IT), leadership and management and business process optimization." (FAC ¶ 16, ECF No. 10, PageID.106). NHLS mainly provided corporate training programs where businesses paid NHLS to train their workers. It also taught career training programs to many student populations, including to VA-supported veterans beginning in 2003. (*See, e.g.*, *id.* at ¶¶ 38–39). NHLS provided an approved program of education other than a program of education leading to a degree and it is not an institution of higher learning.

The FAC alleges that "[t]hroughout its participation in the Post-9/11 GI Bill program NHLS knowingly inflated the amount of reimbursement it sought from the VA for student tuition . . . in violation of 38 U.S.C. § 3313(g)(3)(A), the so-called 'Last Payer Rule,'" and that "NHLS did so despite certifying on those same claims that it was in compliance with the requirements found in Title 38 of the U.S. Code, including but not limited to the Last Payer Rule." (*Id.* at ¶ 4). The FAC alleges NHLS violated the FCA "from at least January 2013 through August 2019" when it "knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval," (*id.* at ¶ 143), and "knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim." (*Id.* at ¶ 147). The FAC also asserts common-law claims for unjust enrichment and payment under mistake of fact. (*Id.* at ¶¶ 150–56).

3

NHLS and the Government executed a tolling agreement, and extensions of that agreement, that tolled the statute of limitations from May 24, 2021, through November 21, 2022. (*Id.* at ¶ 11). The Government filed its Complaint on December 16, 2022, 25 days after the tolling agreements expired. NHLS moved to dismiss on May 5, 2023, and the Government filed its FAC on May 24, 2023.

## III.   <u>LEGAL STANDARD</u>

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint." *Florian v. United States*, No. 18-13352, 2019 WL 2284938, at *1 (E.D. Mich. May 29, 2019) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff "must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Id.* (citing *Iqbal*, 556 U.S. at 678). "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* (citing *Iqbal*, 556 U.S. at 678).

"A motion to dismiss based on . . . the statute of limitations is analyzed under Rule 12(b)(6)." *Dykema Excavators, Inc. v. Blue Cross & Blue Shield Of Michigan*, 77 F. Supp. 3d 646, 652 (E.D. Mich. 2015) (quotations omitted). "Although the statute of limitations is an affirmative defense, dismissal . . . is appropriate under

Rule 12(b)(6) if the 'allegations in the complaint affirmatively show that the claim is time-barred.'" *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1022 (E.D. Mich. 2017) (quoting *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016)); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the . . . statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

In particular, a plaintiff must plead facts showing its claim is not time-barred if "'it is apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). "When it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'" *Id*. (quoting *Hoover*, 958 F.2d at 745).

## IV.  <u>ARGUMENT</u>

### A.  **The Government Has Not Alleged A Plausible Violation of § 3313(g)(3)(A).**

The Government's FAC hinges on its theory that NHLS failed to comply with 38 U.S.C. § 3313 in how it invoiced the VA for educational programs provided to certain veterans who were partially funded under the Post-9/11 GI Bill. The Government alleges that NHLS did not charge those veterans their share of the tuition, then failed to treat that forgone tuition as a grant to the veteran that would

reduce the amount of "actual net cost for in-State tuition and fees" the VA would pay under the formula set forth in § 3313(g)(3)(A)(i)(I). (FAC ¶¶ 27, 57–58). The Government's aggressive theory in this case transforms an alleged act of cutting a break to veterans into the basis for ruinous FCA liability. Section 3313(g) does not support such a theory—and the FAC should be dismissed.

### 1.   The plain text of § 3313(g) does not support liability here.

The Government's theory is fatally flawed because the provision of § 3313(g) it relies on only requires an institution to "net" grants if the institution charges "in-State" tuition—which NHLS, as a private institution, does not charge. The plain text of § 3313(g) does not, as a matter of law, support liability here.

Statutory interpretation begins "with the language of the statute." *Kingdomware Techs, Inc. v. United States,* 579 U.S. 162, 171 (2016) (citation omitted). Where the text is clear, the judicial inquiry "ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see also, e.g., Arangure v. Whitaker,* 911 F.3d 333, 337–38 (6th Cir. 2018).

The Last Payer Rule governs the calculation of the amount of educational assistance available to a veteran under the Post-9/11 GI Bill. The statute is divided into a series of subsections that separately address different types of institutions and educational programs that qualify for assistance.

In the Complaint, the Government originally alleged that § 3313(c) governed

6

NHLS. But that provision only governs "[t]he amounts payable . . . for pursuit of an approved program of education <u>leading to a degree</u> at an <u>institution of higher learning</u>," 38 U.S.C. § 3313(c) (emphases added), even though NHLS is <u>not</u> an institution of higher learning and its programs do <u>not</u> lead to a degree. Instead, NHLS is a private vocational school focusing on IT and business skills. (FAC ¶ 16).

In the FAC, the Government now focuses on a different subsection of the Last Payer Rule, § 3313(g), which applies to the "pursuit of an approved program of education <u>other than a program of education leading to a degree at an institution other than an institution of higher learning</u> . . .." 38 U.S.C. § 3313(g)(1) (emphasis added). Section 3313(g)'s formula sets the amount of assistance payable as the "lesser" of the "actual net cost for in-State tuition" *or* the amount of $17,500 (adjusted for inflation). Specifically, the formula is: "the <u>*lesser*</u> of—

> (I) the *actual net cost for <u>in-State tuition</u> and fees* assessed by the institution concerned for the program of education after the application of—
>
>> (aa) any waiver of, or reduction in, tuition and fees; and
>> (bb) any scholarship, or other Federal, State, institutional, or employer-based aid or assistance . . . that is provided directly to the institution and specifically designated for the sole purpose of defraying tuition and fees any scholarship, or other Federal, State, institutional, or employer-based aid or assistance . . .; **or**
>
> (II) the amount equal to--
>
>> (aa) for the academic year beginning on August 1, 2011, $17,500; or

> (bb) for an academic year beginning on any subsequent August 1, the amount . . . [increased by annual percentage increases] . . ..

*Id.* at § 3313(g)(3)(A)(i) (emphases added).

The Government's theory can only be plausibly alleged if the tuition and fees NHLS allegedly failed to charge to partially-funded veteran students constitute "scholarships, grants, or discounts," (FAC at ¶ 73), that reduce the "actual net cost for in-State tuition and fees" under that subsection. But that subsection's plain text applies only to institutions that charge "in-State tuition and fees." As a result, the § 3313(g)(3)(A)(i)(I) formula applies only to *public* institutions. It necessarily follows that the <u>only</u> limitation applicable to NHLS, a *private institution* that does not charge "in-State tuition," is § 3313(g)(3)(A)(i)(II)'s fixed-fee cap of $17,500 (adjusted for inflation). Because that fixed-fee cap does not require netting of scholarships, grants, or discounts, and because the Government fails to allege that NHLS exceeded the cap, its case must be dismissed.

### 2. <u>Congress did not intend for § 3313(g) to apply to NHLS as the Government now claims.</u>

For the Government to plausibly allege that NHLS was required to deduct alleged "grants" from the tuition it certified to the VA, the phrase "in-State tuition" in § 3313(g)(3)(A)(i)(I) must be read to apply equally to *all* types of tuition—in-State, out-of-State, private, and otherwise. (*See, e.g.,* FAC ¶ 87) (alleging NHLS failed to deduct a "'grant' from the amount of tuition and fees" generally). That

construction requires giving the term "in-State tuition" a different meaning in § 3313(g) than it has in other parts of § 3313, a result at odds with long-standing principles of statutory interpretation. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each."); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally").

In drafting the Last Payer Rule formulas in § 3313, Congress repeatedly used two distinct terms—"actual net cost for in-State tuition and fees" and "actual net cost for tuition and fees." In § 3313(c), referenced above, there are *two* separate formulas that apply, depending on whether the student is pursuing a program at a "public" or at a "non-public or foreign institution of higher learning." In the case of a <u>public institution of higher learning</u>, the formula is:

> . . . the *actual net cost for in-State tuition and fees* assessed by the institution for the program of education after the application of--
>
>> (I) any waiver of, or reduction in, tuition and fees; and
>>
>> (II) any scholarship, or other Federal, State, institutional, or employer-based aid or assistance . . ..

38 U.S.C. § 3313(c)(1)(A)(i) (emphasis added). For <u>non-public or foreign institutions of higher learning</u>, the equivalent formula is "the lesser of—

> (I) the *actual net cost for tuition and fees* assessed by the institution for the program of education after the application of [the same waiver or scholarships as set forth in § 3313(c)(1)(A)(i)(I) and (II)]; or
>
> (II) the amount equal to--
>
>> (aa) for the academic year beginning on August 1, 2011, $17,500; or
>> (bb) for an academic year beginning on any subsequent August 1, the amount . . . [increased by annual percentage increases] . . ..

*Id.* at § 3313(c)(1)(A)(ii) (emphasis added). Hence, in § 3313(c), Congress clearly distinguished these concepts, with *public* institutions governed by an "in-State tuition" formula and *private* institutions governed by a "tuition" formula.

Congress did so *again* in § 3313(e), which governs programs pursued by veterans on active duty. This second set of Last Payer Rule formulas, like the § 3313(c) ones, apply an "in-State tuition" formula to public institutions and a separate "tuition" formula to private ones. 38 U.S.C. §§ 3313(e)(1), (e)(2)(A)(i), (ii).

This consistent usage confirms that the term "in-State tuition" refers to the rate charged by *public institutions* to in-State students—which, as parents of college-bound students know, is usually lower than that charged to out-of-State students. No other definition of "in-State tuition" appears or can be inferred from § 3313, thereby requiring the definition to apply consistently throughout all subsections of § 3313. *See Bailey v. United States*, 516 U.S. 137, 146 (1995) (holding that when "two terms" are used in a statute, courts assume Congress "intended each term to have a particular, non-superfluous meaning"), *superseded by statute on other grounds as*

10

*stated in Welch v. United States*, 578 U.S. 120 (2016).

For example, in *United States v. Detroit Medical Center*, 833 F.3d 671 (6th Cir. 2016), the issue was whether the term "corporations" in a tax refund statute included only "C corporations" or included all types of corporations. One statutory provision used the term "corporations" while another used "C corporations." *See id.* at 673–74. The court held that "[i]f Congress generally intend[ed] unadorned references to 'corporations' to be read as meaning 'C corporations,'" that reading would "render[] the 'C' superfluous" in the other provision, a result "we try to avoid." *Id.* at 678. To avoid rendering the words "in-State" superfluous in § 3313(g), this Court must treat "in-State tuition" as having a *different* meaning than the unadorned word "tuition" that appears throughout § 3313.

Similarly, in *Bailey*, the Supreme Court rejected the Government's expansive read of the word "use" in a firearm offense statute to reach simple possession. The statute imposed penalties "if the defendant, 'during and in relation to any crime of violence or drug trafficking crime . . ., *uses* or *carries* a firearm.'" 516 U.S. at 142–43 (emphasis added). *Bailey* found that reading "use" to encompass possession would "undermine[] virtually any function for 'carry'", rendering that word superfluous, while "a more limited, active interpretation of 'use' preserves a meaningful role for 'carries' as an alternative basis for a charge." *Id.* at 146. This Court should likewise not treat "in-State tuition" and "tuition" as identical, and

11

should preserve a meaningful role for "tuition" in § 3313.

In the end, § 3313(g) limits the amount of educational assistance for public institutions to the "actual net cost for in-State tuition," after deducting grants; <u>or</u>, for private institutions like NHLS, the $17,500 cap. 38 U.S.C. § 3313(g)(3)(A)(i). Here, for *private* institutions, Congress decided to substitute the $17,500 cap for the "actual net cost for tuition" language found in § 3313(c) and (e). That decision should be given full meaning and effect. *Hamden v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."); *see also Keene*, 508 U.S. at 208. As such, the Government may not treat "actual net cost for <u>in-State</u> tuition" and "actual net cost for tuition" as interchangeable, and its claims fail as a matter of law.

> 3. <u>The VA cannot rewrite § 3313(g) to apply to this case.</u>

The plain text of § 3313(g) forecloses the Government's desired read of "in-State tuition." The Government may not invoke principles of administrative-law deference to "interpret" that text to mean something else under the "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate," *Utility Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 328 (2014). "[N]o amount of agency expertise—however sound may be the result—can make" the words in-State tuition in § 3313(g) mean

all kinds of tuition. *See Board of Governors of Fed. Reserve Sys. v. Dimension Financial Corp.*, 474 U.S. 361, 368 (1986). No deference can therefore apply.

In all events, the FAC—like the original Complaint—fails to cite a formal regulation implementing § 3313(g) to which *Chevron* deference could apply. The FAC instead cites three documents: SCO Handbook (excerpts attached as Exhibit A), an informal "VA guidance," (FAC at ¶¶ 24–25, 57–58), and two "Certificate[s] of Approval for Nonaccredited NCD Courses" the VA allegedly sent NHLS in 2015 and 2017 (2017 Certificate attached as Exhibit B). (*Id.* at ¶ 60).[1] But agency handbooks "do not bind the courts," *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999), and while informal agency guidance can have "persuasive value" when "well considered and well reasoned," under *Skidmore* deference principles, *Fazekas v. Cleveland Clinic Found. Health Care Ventures*, 204 F.3d 673, 677 (6th Cir. 2000), the quoted language in the SCO Handbook and "Certificates of Approval" fall short of the mark. The language quoted in the FAC consistently references "actual net cost for in-State tuition" or "net in-state charges" without any hint that this term also means "actual net cost for tuition" for private, non-degree-granting institutions like NHLS. (*See* FAC at ¶¶ 57–58, ¶ 60; Ex. A at 31–32, 45–46; Ex. B. at 4). These documents do not analyze the so-called "interpretation," do

---

[1] These documents may be considered on a motion to dismiss, as they are "referred to" in the FAC and are "central to" the Government's claims. *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

not formally announce the "interpretation," and do not even clearly state what the "interpretation" is. No deference can therefore even plausibly apply.

Finally, the Government cites a few sentences of the SCO Handbook in paragraphs 24 and 25 it may believe support its view. The Government quotes a sentence of the Handbook reading: "'[t]uition is the actual established charges for tuition the student is required to pay,'" (FAC at ¶ 24). But that sentence does not address what tuition the VA will reimburse. The Government next alleges that the Handbook instructs that "[w]here a school charges different tuition rates depending on a students' state residency, the school should report as 'Tuition and Fees,' the in-state tuition rate" and otherwise "the school reports the 'Tuition and Fees' approved by the appropriate SAA..." (*Id.* at ¶ 25). But the FAC quotes no language from the SCO Handbook for that allegation, and the sentence in the cited section that directly addresses that topic distinguishes in-state and out-of-state tuition: "If the student is charged out-of-state tuition, the school will report the in-state Tuition and Fees on the enrollment certification." (Ex. A at 70–71). This sentence does *not* constitute an interpretation, much less one with any persuasive force, that "in-State tuition" in § 3313(g)(3)(A)(i)(I) actually means *all* forms of "tuition."

4.   Even if VA claims its interpretation is entitled to deference, the FAC must still be dismissed under the fair-notice doctrine.

Even if § 3313(g) was ambiguous and the VA sought deference to the interpretation it seeks to apply here, the FAC must *still* be dismissed under the fair-

notice doctrine. That doctrine "embraces a principle that an agency must make its interpretation known before enforcing it." *United States v. Altivia Petrochemicals, LLC*, No. 1:21-cv-640, 2022 WL 458463, *13 (S.D. Ohio Feb. 15, 2022) (citing *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986)). Thus, "[i]f a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express." *Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n*, 528 F.2d 645, 659 (5th Cir. 1976); *see also Christopher v. SmithKline Beecham Corp. dba GlaxoSmithKline*, 567 U.S. 142, 156 n.15 (2012).

Here, the FAC cites no regulation that places entities like NHLS on fair notice of the Government's view that § 3313(g)'s reference to "actual net cost for in-State tuition" (a term applicable to public institutions) also means "actual net cost for tuition" (a term applicable to private institutions). Even if the Government seeks refuge in *Skidmore* deference (NHLS does not concede it can), the FAC does not allege that the interpretation was previously announced and "adequately expressed" to give covered institutions fair notice. As set forth above, the only unofficial guidance cited—the SCO Handbook and Certificates of Approval—repeatedly refer to "in-state tuition" or charges, without clearly explaining that this language entails "actual net cost for tuition" for private, non-degree-granting institutions as well. The FAC must therefore be dismissed.

15

**B.     At a Minimum, The Government's FCA Claims Arising From Claims Submitted Prior To June 18, 2015, Are Time-Barred.**

The FCA's statute of limitations prohibits civil actions that are brought: "(1) more than 6 years after the date on which the violation of section 3729 is committed," or "(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances," whichever occurs last. 31 U.S.C. § 3731(b).

The Government alleges that NHLS violated the FCA "[f]rom at least January 2013 through August 2019" when it "knowingly presented . . . false or fraudulent claims to the United States for payment or approval," (FAC ¶ 143), and "knowingly made . . . false records or statements material to a false or fraudulent claim." (*Id.* at ¶ 147). In this case, the statute of limitations was tolled on May 24, 2021, and the date that is six years and 25 days prior to the tolling date is June 18, 2015.[2] Accordingly, claims presented[3] before that date are time-barred under § 3731(b)(1), rendering them timely only if § 3731(b)(2) applies.

Recognizing the deficiency in the original Complaint of relying only on §

---

[2] The additional 25 days represents the time between when the tolling agreements expired and when the original Complaint was filed on December 16, 2022.

[3] The limitations period under 31 U.S.C. § 3731(b)(1) begins to run when the defendant "presents a claim to the VA . . . for payment." *United States v. Ekelman & Assocs., Inc.*, 532 F.2d 545, 552 (6th Cir. 1976); *see also United States v. Cripps*, 451 F. Supp. 598, 600 (E.D. Mich. 1978).

3731(b)(1), (*see* Compl. ¶ 11, ECF No. 1, PageID.3), the Government now pleads that the "FCA claims in this matter are timely under 31 U.S.C. § 3731(b)(2)." (FAC ¶ 12). But the Government's new allegations are insufficient to overcome the other facts pleaded that affirmatively establish that the Government's pre-June 18, 2015, claims are also untimely under § 3731(b)(2) and must be dismissed.

> 1.  The facts as alleged establish that pre-June 18, 2015, claims are time-barred under § 3731(b)(2).

The three-year limitations period in § 3731(b)(2) begins to run when "the official of the United States charged with responsibility to act in the circumstances" knew or reasonably should have known of the material facts giving rise to the Government's right of action. *See* 31 U.S.C. § 3731(b)(2).

According to the FAC, the VA performed compliance surveys "at NHLS schools between January 2013 and August 2019 and *identified violations of the Last Payer Rule.*" (FAC ¶ 137) (emphasis added). The VA allegedly conducts these surveys "to ensure that payments made by the VA [are] based on correct enrollment information furnished by the school and to ensure that schools understand and follow the requirements of the law." (*Id*. at ¶ 136). The FAC alleges that "on or about May 7, 2017, the VA notified NHLS's Chicago location that it had completed a compliance survey and identified violations in multiple student files where NHLS had failed to report accurate tuition and fees to the VA," and that "VA noted that NHLS failed to deduct the amount of a tuition grant awarded to the student from the

tuition costs certified and submitted to the VA." (*Id*. at ¶ 138).

Taken as true, these allegations establish that the VA had actual knowledge of NHLS's alleged violations of the Last Payer Rule as early as January 2013, and no later than May 7, 2017, more than three years before the tolling agreements began in May 2021. This knowledge precludes the Government from relying on § 3731(b)(2) for the following reasons.

### 2. VA officials are the "official of the United States charged with responsibility to act in the circumstances."

In the FAC, the Government declares that "the appropriate official of the United States is within the Civil Division of the U.S. Department of Justice." (FAC ¶ 10). But VA officials can and should constitute "the official of the United States charged with responsibility to act in the circumstances" whose knowledge here triggers the running of the statute of limitations under § 3731(b)(2).

The FCA does not define who is "the official of the United States," and neither the Sixth Circuit, nor the U.S. Supreme Court have decided this question (to NHLS's knowledge). The district courts are divided. Some courts have held that government employees outside the DOJ can constitute the official of the United States, and others have adopted a different interpretation. *See United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 777 F. Supp. 195, 205 (N.D.N.Y. 1991), *aff'd on other grounds*, 985 F.2d 1148 (2d Cir. 1993) (dismissing FCA claims when senior Army officials in charge of disputed project knew of the facts material to relator's

cause of action); *see also U.S. ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 849–50 (E.D. Va. 2010) (explaining lack of "clear authority" and split amongst "[c]ourts in other circuits"); *LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 294–95 (Fed. Cl. 2018) (noting lack of "a clear answer" and that federal courts were "divided" on this issue); *but see United States v. Szilvagyi*, No. 04-72197, 2005 WL 8178311, *6 (E.D. Mich. Jan. 14, 2005) (recognizing that "[t]he parties do not dispute that the official charged with responsibility to act is an official within the Department of Justice.").

The text and legislative history of § 3731 undercut the Government's view that *only* an official within DOJ's Civil Division is "the official of the United States." While other sections of the FCA reference the Attorney General or Deputy Attorney General, "indicating that Congress knew how to identify those executive officials when it so chose," § 3731(b)(2) "does not refer explicitly to either the Attorney General or to DOJ" and "instead us[es] the broader and more general phrase 'official of the United States.'" *Oracle Corp.*, 751 F. Supp. 2d at 850. Indeed, the Senate originally drafted this section using the "Department of Justice" phrase but *replaced* it with the current, broader language. *Oracle Corp.*, 751 F. Supp. 2d at 850; *see also Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians,* 563 F.3d 1205, 1209 (11th Cir. 2009) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling") (citations omitted).

Finally, a broader interpretation of "the official of the United States"—one that includes the VA officials who oversaw the NHLS compliance surveys—is consistent with statements made on the floor of the Senate that "care should be taken to assure that the information has reached an official in a position both to recognize the existence of a possible violation of this act and to take steps to address it." 132 Cong. Rec. 20,536 (1986) (statement of Sen. Grassley). As discussed below, the VA officials who knew of alleged violations by NHLS were in the position to identify and address those violations. Their knowledge should be sufficient to trigger the running of the statute of limitations in § 3731(b)(2) and pre-June 18, 2015, claims must be dismissed.

          3.    <u>DOJ officials knew or reasonably should have known of NHLS's alleged violations.</u>

Second, even if "the official of the United States" is a DOJ official, knowledge by VA officials may "nonetheless trigger the statute of limitations under the tolling provision's 'reasonably should have known' clause." *Oracle Corp.*, 751 F. Supp. 2d at 852; *see also United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992) ("[U]nder the 'reasonably should have been known' standard, the limitation period under Section 3731(b) may run even while officials at DOJ are unaware of the 'facts material to the right of action.'").

Despite alleging that VA officials knew of NHLS's alleged violations of the Last Payer Rule in May 2017, (FAC ¶¶ 137–38), the Government alleges that "the

very earliest date" the statute of limitations began to run was nearly *three years later*, on "April 29, 2020, when the Civil Division received a referral from VA's Office of the Inspector General and opened its investigation." (*Id.* ¶ 10). But courts have held that DOJ officials *should have known* of the material facts, even if they lacked actual knowledge, when audits revealing those material facts are generally available to federal agencies or shared within an agency to officials "charged with investigating fraud and required by law to refer possible fraud matters to DOJ." *See Oracle Corp.*, 751 F. Supp. at 852; *see also United States v. Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d 1, 12 (D.D.C. 2002) ("DOJ knew or should have known of material facts giving rise to the" claim "when the [Defense Contract Agency] audit was released").

In *Oracle Corp.*, the court dismissed an FCA action after finding that a General Services Administration ("GSA") audit report triggered the running of the statute of limitations under "either interpretation" of "the official of the United States." 751 F. Supp. at 851–53. The court held that "[a]t the very least, the audit report put the government on inquiry notice and provided 'sufficient critical facts to cause a reasonable person to investigate.'" *Id.* at 851–52 (quoting *United States v. Kensington Hosp.*, No. 90-5430, 1993 WL 21446, at *6 (E.D. Pa. Jan. 14, 1993)).

The court also held that even if § 3731(b)(2) was limited to DOJ officials, the distribution of the audit report to four offices within GSA, including to an inspector general within the office charged with investigating fraud and referring possible

fraud matters to DOJ, was enough to trigger the statute. *Id.* at 852–53; *see also Island Park*, 791 F. Supp. at 363–64 (DOJ officials "should have . . . known" of alleged misconduct when HUD released an audit report that was "detailed in its account and widely dispersed in the government," including to offices that "could have—and should have—referred the matter to the Department of Justice.").

Here, the FAC alleges VA officials conducted compliance surveys "between January 2013 to August 2019," (FAC ¶ 137), establishing that DOJ officials either knew or reasonably should have known of the material facts more than three years before the limitations period was tolled in May 2021. The FAC alleges that VA officials identified the specific alleged violations at issue in this action through its compliance surveys, (*id.* at ¶¶ 137–38), and even cites specific examples from these surveys, including "Student M.J." (*Id.* at ¶ 139). There is no question that the compliance surveys sufficiently identified the material facts.

In addition, the VA officials who knew of NHLS's alleged Last Payer Rule violations were "'official[s] in a position both to recognize the existence of a possible violation of the FCA and to take steps to address it.'" *Oracle Corp.*, 751 F. Supp. 3d at 853 (quoting 132 Cong. Rec. 20,536 (1986)). The May 7, 2017 Compliance Survey cited in the FAC, (FAC ¶¶ 138–39), was authored by Chief Education Liaison Officer ("CELO") Ben Berck. *See* May 7, 2017 Compliance Survey (attached as Exhibit C). As a CELO, Mr. Berck oversaw the St. Louis Regional

Processing Office's Education Services Unit, the section of the VA that "[p]rovides supervision and guidance to Education Compliance Survey Specialists for the conduct of 100% audits, school liability, and OIG referrals," and "[t]racks results of compliance surveys and provides reports to leadership." *See* U.S. Dep't of Veterans Affairs Functional Org. Manual v4.0 at 110 (2017), https://www.va.gov/ofcadmin/docs/VA_Functional_Organization_Manual_Version_4.pdf. Mr. Berck was in a position "both to recognize the existence of a possible violation" because he did in fact identify alleged violations by NHLS and processed school debts for the overpayments, (*see* FAC ¶¶ 137–39), and "to take steps to address it" because he is within the unit charged with overseeing compliance surveys and making OIG referrals. *See Oracle Corp.*, 751 F. Supp. 3d at 853.

The FAC allegation that the statute of limitations was not triggered until, at the earliest, the Civil Division received a referral from the VA's OIG, ignores § 3731(b)(2)'s "should have known" language and case law holding DOJ's actual knowledge is not required. The Government disregards VA officials' responsibility to identify and report alleged fraud, and that here, the alleged violations were identified at least three years before VA allegedly referred the matter to DOJ's Civil Division. The Government's narrow interpretation incentivizes gamesmanship by government officials who identify potential fraud to delay making a formal referral to the Civil Division, to extend the time to bring suit under § 3731(b)(2). That cannot

be the intended effect of the statute.

### C.      The Government's Common Law Claims Are Time-Barred.

The Government's claims for payment under mistake of fact and for unjust

enrichment, (FAC ¶¶ 150–56), for claims paid prior to June 18, 2015, are untimely

and must be dismissed. The Government alleges claims the VA paid[4] "from at least

January 2013 through August 2019," are timely under the six-year limitations period

of 28 U.S.C. § 2415 and the tolling provision of § 2416(c). (*Id.* at ¶¶ 12, 150, 153).

Section 2416(c) excludes periods where "facts material to the right of action

are not known and reasonably could not be known by an official of the United States

charged with the responsibility to act in the circumstances." 28 U.S.C. § 2416(c).

The "majority view" is that a "'responsible official' under section 2416 is not limited

to officials in the Department of Justice who have the authority to initiate litigation."

*U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, No. CIV.A. H-95-5614, 2001 WL

34109383, at *4 (S.D. Tex. Sept. 26, 2001); *see also United States v. Bollinger

Shipyards, Inc.*, No. CIV.A. 12-920, 2013 WL 393037, *14 (E.D. La. Jan. 30, 2013);

*United States v. Boeing Co., Inc.*, 845 F.2d 476, 482 (4th Cir. 1988), *rev'd on other

grounds sub nom. Crandon v. United States*, 494 U.S. 152 (1990). Audits conducted

outside of DOJ can establish the responsible officials knew or reasonably should

---

[4] These claims "accrue" on the date of payment. *United States v. Beck*, 758 F.2d
1553, 1558 (11th Cir. 1985).

have known of alleged violations, defeating the application of § 2416(c). *See Beck*, 758 F.2d at 1558–59; *Intrados/Int'l Mgmt. Grp.*, 265 F. Supp. 2d at 113–14.

The FAC alleges the VA "identified violations of the Last Payer Rule" by NHLS as early as January 2013 via the compliance surveys. (FAC ¶ 137). Because VA officials were responsible for approving NHLS to enroll veteran students and ensuring NHLS "underst[ood] and follow[ed] the law," (*id.* at ¶ 136), they are officials "charged with the responsibility to act" whose actual knowledge precludes tolling under § 2416(c). *See Bollinger Shipyards, Inc.*, 2013 WL 393037, at *14.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the FAC should be dismissed with prejudice.

Respectfully submitted,

/s/ Patrick T. Lewis
Gregory S. Pierce (P45552)
GS Pierce, PC
4233 Cherry Hill Drive
Orchard Lake, MI 48323
Phone: 734-853-2043
Email: gspierce1965@gmail.com

Erika Dackin Prouty (Ohio 0095821)        Patrick T. Lewis (Ohio 0078314)
BakerHostetler LLP                        BakerHostetler LLP
200 Civic Centre Drive, Suite 1200        127 Public Square, Suite 2000
Columbus, Ohio 43215                      Cleveland, Ohio 44114
Phone: 614-228-1541                       Phone: 216-621-0200
Email: eprouty@bakerlaw.com               Email: plewis@bakerlaw.com

*Counsel for Defendant*
*NH Learning Solutions Corporation*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 14, 2023, I filed the foregoing document via the Court's CM/ECF system and that I caused the foregoing document to be served through the CM/ECF system upon all counsel of record. Parties can download this document via the Court's system.

*/s/ Patrick T. Lewis*
Patrick T. Lewis

*Counsel for Defendant,*
*NH Learning Solutions Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:22-cv-13045-LJM-CI |
| vs. | Hon. Laurie J. Michelson, Judge |
| NH LEARNING SOLUTIONS CORPORATION. | Hon. Curtis Ivy, Jr., Mag. Judge |

## BRIEF CERTIFICATION FORM

I, Patrick T. Lewis, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

*/s/ Patrick T. Lewis*
Dated this 14th day of June, 2023.

27