## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

United States of America,

     Plaintiff,

                              Civil Action No. 22-13045

v.                            Honorable Jonathan J.C. Grey

NH Learning Solutions Corp.,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO DISMISS (ECF No. 13)

On December 16, 2022, plaintiff United States of America brought this action against NH Learning Solutions Corp. ("NHLS") for alleged false claims submitted to the government in violation of the False Claims Act ("FCA"). (ECF No. 10.) NHLS filed a motion to dismiss on June 14, 2023. (ECF No. 13.) For the following reasons, the Court **DENIES** NHLS' motion to dismiss.[1]

---

[1] The Court concludes that oral arguments would not aid in the disposition of the motion, and it rules on the briefs alone. *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on the briefs without a hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan L.R. 7.1(f)(2) gives discretion to the Court to decide motions without hearings).

## I.   Background

The complaint stems from an alleged scheme by NHLS to defraud the government through claims submitted to the Department of Veteran Affairs ("VA") under the Post 9-11 GI Bill, 38 U.S.C. §§ 3301–27. The GI Bill provides tuition assistance to veterans and members of the armed forces for qualified education and training institutions. (ECF No. Further, it pays a housing allowance and a stipend for non-tuition education expenses. NHLS was a qualified education and training institution eligible to receive funds from the VA for educational services provided to beneficiaries.

The mechanism of the alleged scheme is as follows. Beneficiaries receiving GI Bill benefits could be entitled to maximum benefits (100%) or partial benefits (less than 100%). NHLS would charge the VA for the full tuition amount for every beneficiary entitled to GI Bill benefits. For beneficiaries who were entitled to full benefits, the VA would pay the full amount to NHLS. For beneficiaries who were only entitled to partial benefits, the VA would only pay a partial amount of the tuition cost to NHLS. The beneficiary who received partial funds would be responsible for the remaining balance to NHLS. However, through grants,

2

scholarships, and waivers, NHLS would forgive the remaining balance for beneficiaries who were not fully funded. Thus, NHLS would only receive payment from the VA for tuition, even if the beneficiary was responsible for some of the costs under the statute. The government is claiming that NHLS knowingly overcharged the VA through this scheme.

In response to NHLS' claim of untimeliness, the government responds that that the earliest it reasonably should have known of the injury was April 29, 2020.

## II. Legal Standards

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Additionally, when deciding whether to dismiss a case, the Court will typically only rely on the facts stated in the complaint. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citations

omitted).

Statute of limitations is an affirmative defense; however, dismissal under Rule 12(b)(6) for the defense may still be appropriate if the allegations in the complaint establish that the claim is time barred. *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1022 (E.D. Mich. 2017) (citing *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016)).

## III.   Analysis

NHLS makes two arguments. First, it argues that the government's claim is time barred. Next, it argues that it is not covered by the provision the government sues under.

### A. Statute of Limitations

Under 31 U.S.C. § 3731, an action under the FCA is time-barred if it is filed: (1) more than six years after the date of the violation or (2) "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances . . . whichever occurs last." NHLS argues the government's claim is time-

barred because VA officials knew about the payment scheme at least as early as January 2013 or, at the latest, by May 7, 2017.

According to the first amended complaint ("FAC"), the VA performed compliance surveys at NHLS' schools between January 2013 and August 2019. After receiving some of these compliance surveys, the VA noted the violations alleged in the FAC. Therefore, NHLS argues, the VA was on notice of these violations when it began these surveys or, at the latest, when it noted violations.

The government contends that no VA official qualifies as "the official of the United States charged with responsibility to act in the circumstances," under 31 U.S.C. § 3731. (ECF No. 16.) The government argues that the only official authorized to act "in the circumstances" is the Attorney General of the United States ("AG"). Since the AG has delegated that authority to the Civil Division of the United States Department of Justice, the government argues that an official of the Civil Division is the authorized official. The government explains that the statute of limitations did not start until an official in the Civil Division should have known about the scheme, which it claims was no earlier than April 29, 2020. NHLS disagrees.

5

NHLS correctly notes that the Sixth Circuit and the Supreme Court have not answered this question and that district courts are somewhat divided on this issue. *Compare United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 777 F. Supp. 195, 205 (N.D.N.Y. 1991) (holding that government officials other than DOJ attorneys qualify for purposes of the statute clock), *with United States v. Macomb Contracting Corp.*, 763 F. Supp. 272, 274 (M.D. Tenn. 1990) (holding that the only official that qualifies under the statute is the appropriate official in the Civil Division).

However, the weight of the persuasive authority is against NHLS. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 607–08, (S.D.N.Y. 2013) (collecting cases showing that most courts that consider the issue have reached the conclusion that the relevant official is the Attorney General).

Even some of the cases NHLS cites do not fully support its argument. In *United States ex rel. Frascella v. Oracle Corp.*, the court held that even if the statute only referred to DOJ officials, the DOJ official was on notice of the alleged violations because another agency had publicly distributed a report that should have put the DOJ on notice that

6

an FCA violation had occurred. 751 F. Supp. 2d 842, 849–50 (E.D. Va. 2010). While it heavily implied it, that court never held that the statute applied to other government officials.

The court in *LW Construction of Charleston, LLC v. United States*, found that binding precedent in the United States Court of Federal Claims specified that the statute referred to an official in the Civil Division. 139 Fed. Cl. 254, 295 (2018). That court then ruled that some of the claims were time barred, but it never specified whether it based its decision on knowledge of the other agency officials or of the DOJ officials. *Id.* at 296. However, it appears that the decision rests on the court's finding that, based on the allegations in the complaint and counterclaim, the DOJ had information that should have put it on notice of the alleged violations more than three years before it filed its FCA counterclaim. *Id.* The Court finds that, in the best case for NHLS, the *LW Construction* holding is ambiguous and, in the worst case, it supports the government's view.

The majority of opinions that address this issue support the government. *See Wells Fargo Bank*, 972 F. Supp. 2d at 607 (collecting cases). The Court finds that the reasoning of the decisions in the majority

7

view most persuasive and adopts it. Therefore, this Court holds that the only official the statute refers to is the AG, specifically, to an official in the Civil Division since the AG has delegated its authority to that division.

Based on the pleadings, the Court finds that the government has sufficiently alleged that the earliest a Civil Division official knew about the scheme was April 29, 2020. However, the Court makes no findings as to the truth of that statement, and NHLS will have an opportunity to prove its affirmative defense with sufficient factual support through a summary judgment motion or at trial.[2]

## B. Section 3313(g)(3)(A) Applies to NHLS

This dispute involves the so-called "Last Payer Rule," 38 U.S.C § 3313(g). This statute applies to the "pursuit of an approved program of education other than a program of education leading to a

---

[2] NHLS also argues that the results of the compliance surveys should have placed the Civil Division on inquiry notice even if its officials did not have firsthand knowledge. *See Oracle Corp.*, 751 F. Supp. 2d at 852. However, there is a factual dispute on this issue. Even if the Court decides to adopt the theory of "inquiry notice," it is unclear if the VA published any reports that included the compliance surveys or if there were any other publicly issued documents that the Civil Division could have found through reasonable inquiry. From a brief review of the exhibits, the surveys do not appear to be published. (*See* ECF No. 13-3.) However, as this is a motion to dismiss, the Court is not to make any evidentiary findings. Given the allegations in the complaint, the Court finds that the government has adequately pleaded the date that officials in the Civil Division were first aware.

degree at an institution other than an institute of higher learning . . ."
*Id.*(g)(1). Both parties seem to agree that § 3313(g) generally applies to
NHLS.

Statutory interpretation begins "with the language of the statute."
*Kingdomware Tech., Inc. v. United States*, 579 U.S. 162, 171 (2016). If the
language is unambiguous and the statutory scheme is consistent and
coherent, the inquiry ends. *Id.* Both parties claim that the statute is
unambiguous and wholly supports their interpretation. However, the
Court finds that the disputed language of § 3313(g) is ambiguous given
the context and structure of the statute.[3]

If the plain meaning of the statute is ambiguous, it "is a
fundamental canon of statutory construction that the words of a statute
must be read in their context and with a view to their place in the overall
statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022)
(citation omitted).

---

[3] The Court notes that in its motion, NHLS preemptively defends against a *Chevron* argument. *See Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837(1984). However, as the government correctly states, this issue does not involve interpretating an agency's policy statement or rule. The dispute involves a direct interpretation of a statute. (ECF No. 16.)

According to § 3313(g)(3), the "amounts of educational assistance payable" for an approved program, such as, NHLS, is "equal to the lesser of—(I) the actual net cost for in-State tuition and fees assessed by the institution concerned for the program of education . . . or (II) the amount equal to—(aa) . . . $17,500 . . ." The dispute arises over whether the phrase "in-State tuition and fees" and the following clause only apply to public-institutions that offer in-State tuition rates. NHLS claims that section (I) only applies to public-institutions that offer in-State rates and that all other institutions are shuttled straight into section (II) with its flat rate. The government claims that the term "in-State tuition" applies to both public and private institutions, which will always only have one rate, and that the in-State modifier is only relevant when the institution provides an in-State rate.

Both parties claim that the others' reading would lead to superfluous language. Both parties are correct. If the Court adopts the government's view, an adjective loses some meaning. On the other hand, if it adopts NHLS' view, a whole section of the statute becomes superfluous for certain, nonfrivolous circumstances. Given that NHLS'

view raises more interpretive issues, the Court holds that the government is correct.

Statutory analysis begins with interpretation of the plain language and ordinary meaning of the word. The term "in-State tuition" is a compound word so breaking it into its component parts yields the following: (1) "in" is an adverb that modifies the word State and it means within a particular space, *in*, Meriam-Webster Unabridged Dictionary (last visited Feb. 7, 2024); (2) State here is part of a compound adjective that modifies the word tuition and refers to a generic State of the United States, 38 U.S.C. § 101(20); and (3) tuition is the price for instruction, *tuition*, Meriam-Webster Unabridged Dictionary (last visited Feb. 7, 2024). This dictionary definition is not particularly useful. However, it is widely understood that many public schools offer discounts to students who reside in the same state as the school. *See* Wayne State University, Tuition and Fees, https://perma.cc/FV83-NQE4 (distinguishing tuition rates for non-residents and residents); Michigan State University, Cost and aid, https://perma.cc/L958-CXYU (same); University of Michigan, Michigan Residents, https://perma.cc/CJU8-36RP (providing additional financial aid to residents). The Court is unaware of, and the parties have

11

provided no examples of, any private schools that offer in-State tuition discounts. As such, the plain meaning of the term supports NHLS' position. Normally, that would be the end of the matter. *See Kingdomware*, 579 U.S. at 171. But the reading based on plain text alone would render the statutory scheme inconsistent and incoherent.

In support of its argument, NHLS also points to other portions of the statute that distinguish between tuition and in-State tuition. For example, in § 3313(c), the statute explicitly distinguishes between an "education pursued at a public institution," (c)(1)(A)(i), with its "actual net cost for in-State tuition" and an "education pursued at a non-public or foreign institution," (c)(1)(A)(ii), with its "actual net cost for tuition."

Typically, the Court applies the "presumption of consistent usage": the same words mean the same thing and different words mean different things. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 318 (2014). However, the presumption readily yields to contextual analysis, particularly when, as here, "the Act is far from a *chef d'oeuvre*[4] of legislative draftsmanship." *King v. Burwell*, 576 U.S. 473, 493 n.3 (2015).

---

[4] Masterpiece.

Further supporting NHLS is a related but separate argument under the canon against surplusage. That is, reading these two disputed terms to mean the same thing in one portion of the statute and different things in another would render one of the terms superfluous. The canon against surplusage provides that the Court should "give effect, if possible, to every word Congress used." *In re Davis*, 960 F.3d 346, 354–55 (6th Cir. 2020) (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, — U.S. —, 138 S. Ct. 617, 632 (2018)). While this is another construction argument in favor of NHLS, that canon applies with equal if not greater force to whole paragraphs, provisions, or sections. *Id.*; *Yates v. United States*, 574 U.S. 528, 543 (2015) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

As the government correctly points out, if the term in-State tuition only applies to public institutions, it renders the entire section (I) clause superfluous and creates a nonsensical reading. The statute says that the amount of assistance payable is the lesser of (I) the in-State tuition or (II) a flat rate determined by the statute. If the first section does not apply to private institutions, then the clause becomes ridiculous. It is meaningless

to compare an undefined term, i.e., nothing—as opposed to the value zero—to a flat rate. However, even if only section (II) applies to private institutions, that would still leave all of clause (I) superfluous in cases with private institutions. That understanding raises larger issues than trying to force the broad term "tuition" into the narrow term "in-State tuition".

Additionally, the structure of the statute supports the government's reading. The statute covers approved payment amounts for alternative education arrangements. Those arrangements are for a qualified beneficiary (1) pursuing a degree at an institution of higher learning on a full-time basis, § 3313(c); (2) pursuing a degree on active duty on a full-time basis for more than 30 days, § 3313(e); (3) pursuing an education on a half-time basis or less, § 3313(f); or (4) pursuing an education in a program that does not lead to a degree, § 3313(g). Within the last category, there are sub-categories of (a) programs leading to certificates or non-college degrees; (b) programs of apprenticeship or other on-job training; (c) programs for flight training; and (d) programs of education pursued exclusively by correspondence. § 3313(g). These portions of the

statute are inconsistent and incoherent if NHLS' interpretation is correct.

All public and private institutions are within the scope of § 3313. *See* § 3313(b). For programs leading to degrees, pursued on a full-time basis, the statute explicitly distinguishes between private institutions with tuition and public institutions with in-State tuition:

> (c) Programs of education leading to a degree pursued at institutions of higher learning on more than half-time basis.— The amounts payable under this subsection for . . . are amounts as follows:
>
>> (1) In the case of an individual entitled to educational assistance under this chapter . . . amounts as follows:
>>
>>> (A) An amount equal to the following:
>>>
>>>> (i) In the case of a program of education pursued at a ***public institution of higher learning***, the actual net cost for ***in-State tuition and fees*** assessed by the institution for the program of education after the application of—
>>>>
>>>>> . . . .
>>>>
>>>> (ii) In the case of a program of education pursued at a ***non-public or foreign institution of higher learning***, the lesser of—
>>>>
>>>>> (I) the actual net cost for ***tuition and fees*** assessed by the institution for the program of education after the application of—

15

. . . .; or

(II) the amount equal to—

    (aa) for the academic year beginning on August 1, 2011, $17,500; or

    (bb) for an academic year beginning on any subsequent August 1, the amount for the previous academic year beginning on August 1 under this subclause, as increased by the percentage increase equal to the most recent percentage increase determined under section 3015(h).

38 U.S.C. § 3313(c) (emphasis added); *accord* § 3313(e) (substantially similar provisions for active-duty members pursuing a degree on a full-time basis for more than 30 days.). And for programs of education pursued on a half-time basis or less ("part-time") the statute states:

(f) Programs of education pursued on half-time basis or less.—

    . . . .

    (2) Amount of assistance.—The educational assistance payable under this chapter . . . is the amounts as follows:

        (A) The amount equal to the lesser of—

            (i) the actual net cost for ***in-State tuition and fees*** assessed by the institution of higher learning for the program of education after the application of—

16

(I) any waiver of, or reduction in, tuition and fees[5]; and

(II) any scholarship, or other Federal, State, institutional, or employer-based aid or assistance (other than loans and any funds provided under section 401(b) of the Higher Education Act of 1965 (20 U.S.C. 1070a(b))) that is provided directly to the institution and specifically designated for the sole purpose of defraying tuition and fees; or

(ii) *the maximum amount that would be payable to the individual for the program of education under paragraph (1)(A) of subsection (c)* . . . if the individual were entitled to amounts for the program of education under subsection (c) rather than this subsection.

38 U.S.C. § 3313(f) (emphasis added). Subsection (f) (part-time programs) is different from subsections (c) and (e) (full-time programs) in that it references in-State tuition without reference to the public or private status of the institution. As highlighted, subsection (f) (part-time programs) then incorporates the provisions of subsection (c) (full-time),

---

[5] The Court notes that the statute uses in-State tuition and fees and tuition and fees interchangeably here, in the immediately following subsection, and in other similarly structured sections. But given that the modifier would be unnecessarily verbose in these places, this inconsistent usage provides limited but non-frivolous support to the government's contention.

which includes the references to public and private institutions and "in-State tuition" and "tuition."

And finally, for programs of education not leading to a degree the statute says:

> (g) Programs of education other than programs of education leading to a degree.—
>
> > . . . .
>
> > (2) Pursuit on half-time basis or less.—***The payment of educational assistance under this chapter for pursuit of a program of education . . . on a half-time basis or less is governed by subsection (f)***.
>
> > (3) Amount of assistance.—The amounts of educational assistance payable . . . are as follows:
>
> > > (A) In the case of an individual enrolled in a program of education (other than a program described in subparagraphs (B) through (D)) in pursuit of a certificate or other non-college degree, the following:
>
> > > > (i) Subject to clause (iv), an amount equal to the lesser of—
>
> > > > > (I) the actual net cost for ***in-State tuition and fees*** assessed by the institution concerned for the program of education after the application of—
>
> > > > > > (aa) any waiver of, or reduction in, tuition and fees; and
>
> > > > > > (bb) any scholarship, or other Federal, State, institutional, or

18

> employer-based aid or assistance (other than loans and any funds provided under section 401(b) of the Higher Education Act of 1965 (20 U.S.C. 1070a(b))) that is provided directly to the institution and specifically designated for the sole purpose of defraying tuition and fees; or
>
> (II) the amount equal to--
>
>> (aa) for the academic year beginning on August 1, 2011, $17,500; or
>>
>> (bb) for an academic year beginning on any subsequent August 1, the amount for the previous academic year beginning on August 1 under this subclause, as increased by the percentage increase equal to the most recent percentage increase determined under section 3015(h).

38 U.S.C. § 3313 (g).

There are many issues raised by the structure of subsection (g) if the Court adopts NHLS' view. First, in the other sections of the statute that distinguish between "in-State tuition" and "tuition," the sections explicitly state that the provision either applies to public schools or

private schools. In section (g), however, there is no mention of private or public schools, and it only uses the term "in-State tuition."

Relying on the plain meaning alone does not resolve this inconsistency and ambiguity. "[I]nterpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction to its meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). That is, the Court looks to the provisions of the whole law to determine the meaning of an uncertain phrase. Looking to the other provisions, it is clear that if Congress intended section (g)(3)(A)(i)(I) to only apply to public schools, it would have done so explicitly, as it had in other sections.

Second, subsection (2) and subsection (3) would arbitrarily apply different calculations to part-time and full-time programs of education provided by private institutions. Subsection (2) says that programs under section (g) that are only pursued part-time are controlled by the provisions regarding part-time enrollment in section (f). The part-time enrollment provisions allow for the distinction between public and private institutions and for the comparator between a flat rate and actual

tuition charged by a private institution.[6] However, if the program is pursued full-time and the program is provided by a private institution, under NHLS' understanding, there is no comparator, and the flat rate is the only option.

However, as NHLS correctly contends, even an odd result may not necessarily doom an interpretation. *See Chapman v. Higbee Co.*, 319 F.3d 825, 832 (6th Cir. 2003) (an absurd result in this context is not merely a result that the Court does not like, but rather is a result that is "patently illogical or contrary to Congress' intent"). Perhaps Congress intended full-time enrollees to receive a different calculation than part-time ones based on some unknown policy justification. But that is only one of the issues raised by its interpretation given the structure.

The next issue comes from inconsistency in section (g) itself. Subsection (3)(D) of section (g) reads as follows:

> (g) Programs of education other than programs of education leading to a degree.—
>
> . . . .
>
> (3) Amount of assistance.— The amounts of educational assistance payable . . . are as follows:

---

[6] The half-time provisions do so by incorporating section (c) by reference.

. . . .

(D) In the case of an individual enrolled in a program of education that is ***pursued exclusively by correspondence*** (regardless of the institution providing such program of education), an amount equal to—

(i) the lesser of—

(I) the actual net cost for ***tuition and fees*** assessed by the institution concerned for the program of education after the application of—

. . . .

(II) the amount equal to—

(aa) for the academic year beginning on August 1, 2011, $8,500; or

(bb) for an academic year beginning on any subsequent August 1, the amount for the previous academic year beginning on August 1 under this subclause, as increased by the percentage increase equal to the most recent percentage increase . . .

38 U.S.C. § 3313(g)(3)(D). In subsections (g)(3)(A) and (g)(3)(D), the statute follows the same structure and uses almost identical language, except when it refers to tuition and fees. For remote education programs, it references tuition generally; however, for in-person programs, it refers

to in-State tuition. Again, perhaps Congress intended these two different forms of education to be governed by different regimes. But the mounting inconsistencies within the statute hurt NHLS' interpretation.

These inconsistencies and the presumption against surplus usage are enough to overcome a plain-language reading. But when combined with the legislative history, the picture becomes clearer.

The original Post-9/11 Veterans Educational Assistance Act of 2008 ("Post-9/11 GI Bill") was passed on June 30, 2008. Pub. L. No. 110-252, § 5001, 122 Stat. 2323, 2357. The original version of the bill did not provide for education assistance for non-degree granting institutions. *Id.*, § 5003, 122 Stat. at 2363–66. Further, the statute utilized a complicated, arguably incomprehensible, scheme to attempt to limit the maximum benefit to the highest rate charged for in-State tuition for that course by public universities. *See id.* at 2363 ("the amount payable under this subparagraph may not exceed the maximum amount of established charges regularly charged in-State students . . . by the public institution of higher education . . . in the State in which the individual is enrolled that has the highest rate of regularly-charged established charges . . . among all public institutions of higher education in such State").

23

Recognizing the confusing, unpredictable, and arbitrary nature of the original provision, the Senate Committee on Veterans' Affairs recommended a bill to amend the Post-9/11 GI Bill. S. Rep. No. 111-346, at 9 (2010). The amendment would, for the first time, allow for assistance payments to programs of education that do not lead to a degree. *Id.*, at 13. The Committee report states:

> Subsection (b) of section 105 of the Committee bill would authorize assistance to be paid on behalf of an individual enrolled in certain specified programs of education not leading to a degree. It would further provide that the amount of educational assistance for pursuit of non-degree programs offered in residence would be up to the lesser of the actual net cost of the program or the $20,000 adjusted cap . . . Finally, in the case of an individual enrolled in a program pursued entirely by correspondence (regardless of the institution offering such a program), subsection (b) of this section would provide for the payment of an amount up to the lesser of the actual net cost of the program or an annually adjusted maximum cap of $10,000.

*Id.* The bill was passed with some minor, inconsequential proposed amendments.[7] Pub. L. No. 111-377, 124 Stat. 4106 (2011). From this Committee report, the drafters of the bill understood the language to

---

[7] Inconsequential to this analysis. The bill was amended to decrease the flat rates by a small amount and to modify the section pertaining to degrees pursued full-time by active-duty members. *See* 156 Cong. Rec. S8954 (daily ed. Dec. 13, 2010) (statement of Senator Daniel Akaka) (stating the proposed amendments on the record).

provide educational assistance to in-person programs in an amount up to the lesser of the *actual net cost* of the program, regardless of the program provider's public or private status, or the then-$20,000 flat cap.

In light of the statutory context and structure and the legislative history, the Court holds that the government's interpretation is the correct one. The use of the term "in-State tuition," instead of "tuition," does not render § 3313(g)(3)(I) inapplicable to private institutions. Thus, NHLS is subject to that provision.

## IV.  Conclusion

Accordingly, **IT IS ORDERED** that NHLS' motion to dismiss (ECF No. 13) is **DENIED**.

**SO ORDERED.**

s/Jonathan J.C. Grey
Jonathan J.C. Grey
Date: March 31, 2024                United States District Judge

<u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2024.

<u>s/ S. Osorio</u>
Sandra Osorio
Case Manager